UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Julie V. DeGraw,
    Plaintiff,

vs.                                    Case No.: 8:18-cv-02116-T36-SPF

Bob Gualtieri, et al.
    Defendants.
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO SUBSTITUTE EXPERT WITNESS**

On January 30, the plaintiff's police practices expert, D. P. Van Blaricom, testified that he did not have any opinions on the Sheriff's training, supervision, or discipline of his deputies. Doc. 79-1, at 23/1-14, 26/19-29/4, 30/10-20, 38/7-10. This is unsurprising; he did not offer such opinions in his report and he was not sent, nor did he review, any documents on those issues. Id. at 14/5-15, 17/10-18/5, 21/24-22/20, 24/15-17, 38/1-6. And Mr. Van Blaricom's only criticism of the Sheriff's use-of-force policy was he wished it were more restrictive. Id. at 37/3-25. Ninety minutes in, Mr. Van Blaricom said he felt unwell and counsel agreed to continue his deposition. Id. at 42/7-43/18. Cognizant that the opinions in Mr. Van Blaricom's report and his testimony are fatal to her Monell claims, the plaintiff now wants to start over with a new expert and asserts, without any evidentiary showing and based only on counsel's "opinion," that Mr. Van Blaricom is physically and mentally unfit to complete his deposition. Doc. 77, at 4 ¶ 16. The motion should be denied.

**I.    RELEVANT BACKGROUND**

1.    This is a § 1983 case in which the plaintiff contends that Deputy Goepfert's use of a Taser on Donald DeGraw was unconstitutional. The plaintiff also claims that the

Sheriff is constitutionally liable for DeGraw's death, both individually and in his official capacity under Monell v. Department of Soc. Servs., 436 U.S. 658 (1979).

2. On November 22, 2019, the plaintiff timely disclosed her experts, including Mr. Van Blaricom, who issued a detailed, 18-page, single-spaced report containing his opinions. Doc. 79-2.

3. After Mr. Van Blaricom submitted his report, on December 6, 2019, Mr. Van Blaricom's wife died. Doc. 77, at 3 ¶ 12.

4. Although the plaintiff's lawyer knew of this earlier, the undersigned counsel only learned of it on January 14, 2020. Doc. 77, at 2 ¶¶ 6-7.

5. Despite the unfortunate passing of his wife, Mr. Van Blaricom scheduled his deposition for January 21, 2020. Doc. 77, at 2 ¶ 5.

6. As that date neared, the plaintiff's attorney asked — and the undersigned agreed — to continue Mr. Van Blaricom's deposition. Doc. 77, at 2-3 ¶ 7. Mr. Van Blaricom selected January 30, 2020.

7. On January 30, 2020, Mr. Van Blaricom testified as scheduled.

8. After about 90 minutes of uninterrupted testimony, the undersigned counsel asked to take a break. Doc. 79-3, at 1 ¶ 4.

9. Off the record, Mr. Van Blaricom stated that he did not feel well — he had earlier said that he thought he was "coming down with something," but had declined the invitation to take a break stating he was "fine," Doc. 79-1, at 25/25-26/16 — and asked how much longer counsel thought the deposition would last, Doc. 79-3, at 1 ¶ 5.

10. The undersigned counsel replied that the deposition was scheduled for one day of seven hours, but that, in light of the testimony he had already given, it was unlikely

that it would take that long. Doc. 79-3, at 2 ¶ 6. Specifically, the undersigned counsel — in the presence of the plaintiff's lawyer — reviewed with Mr. Van Blaricom that he did not have and was not rendering any opinions on the Sheriff's training, supervision, or discipline of his deputies and that the only criticism he had of the Sheriff's policies was one of preference. Id. at 2 ¶ 7. Mr. Van Blaricom confirmed that this was correct and, in light of that, the undersigned counsel represented that the deposition would not require anywhere near the time allotted, although there remained some matters to inquire into. Id. The undersigned counsel then said that he would step out of the room to get coffee and asked that Mr. Van Blaricom and the plaintiff's lawyer confer about whether Mr. Van Blaricom was able to continue giving testimony that day. Id.

11. When the undersigned counsel returned, the plaintiff's counsel asked to speak with him. Id. at 2 ¶ 8. She said that she thought the deposition should be continued. Id. The undersigned counsel replied that whether Mr. Van Blaricom felt well enough to continue testifying was ultimately up to him, and added that if he could not continue, that statement needed to be made on the record, along with an on-the-record agreement that the deposition would be continued. Id. at 2 ¶ 9.

12. The undersigned counsel also said that he was concerned that the plaintiff would use the continuation to try to rehabilitate Mr. Van Blaricom's unhelpful testimony by sending him discovery materials that he was never provided and that Mr. Van Blaricom would, on continuation, opine differently on the <u>Monell</u> claims than what was in his report and in the testimony he had just given. Id. at 2-3 ¶ 10. The plaintiff's lawyer assured the undersigned that that would not occur. Id.

13. Back on the record, Mr. Van Blaricom testified that he was able to continue testifying. Doc. 79-1, at 42/7-18. It was only after being prodded by the plaintiff's lawyer that Mr. Van Blaricom said that he wanted to continue the deposition to another date. Id. at 42/19-43/17.

14. Several days later, the plaintiff's counsel decided that, rather than continuing Mr. Van Blaricom's deposition, she now wanted to substitute another expert in his place. Doc. 77, at 5 ¶ 18.

15. The undersigned and the plaintiff's counsel conferred in-person on February 4, 2020 about this. Doc. 79-3, at 3 ¶ 11. The undersigned inquired what Mr. Van Blaricom's status was and was told only that she did not know. Id. at 3 ¶ 12. The undersigned said that he believed that whether Mr. Van Blaricom was available to continue his service as an expert and conclude his deposition were threshold issues and whether the plaintiff should be permitted to substitute another expert — and the attendant prejudice to the defendants in her doing that — were subjects that needed to be addressed only if and when it was became apparent that Mr. Van Blaricom was not available and would not be available in any timeframe that was consistent with the just and efficient prosecution of this case. Id. at 3 ¶ 13.

16. The undersigned counsel also said, and reiterated in writing, that he was agreeable to petitioning the Court for an extension of time to determine Mr. Van Blaricom's status — e.g., so that Mr. Van Blaricom could be asked whether he was abandoning the case, whether he was healthy enough to complete the deposition, and whether there were accommodations that could be made, or an amount of time that could be provided, that would enable him to complete his testimony. Id. at 3 ¶ 14.

17. On February 7, the plaintiff filed a motion seeking to replace Mr. Van Blaricom with a new expert. Doc. 77.

## II. THE PLAINTIFF HAS NOT MADE A SHOWING OF MR. VAN BLARICOM'S ABANDONMENT OF THE CASE OR UNAVAILABILITY AND SUBSTITUTION IS PREJUDICIAL TO THE DEFENDANTS

18. Despite lacking any medical training, the plaintiff's lawyer states in her motion that, "In the opinion of the undersigned, the expert witness is not physically and mentally fit to reasonably be expected to continue to serve as an expert witness for the Plaintiff herein." Doc. 77, at 4 ¶ 16.

19. The plaintiff's lawyer further opines that "it is unknowable if and when he would ever be physically and mentally recovered." Doc. 77, at 5 ¶ 17.

20. Plaintiff's counsel's opinion on Mr. Van Blaricom's physical and mental condition lacks any proper foundation and has no evidentiary value.

21. The undersigned counsel has repeatedly implored the plaintiff's lawyer, in person and in writing, to inquire of Mr. Van Blaricom on these issues. She has not done so, but rather baldly asserts that his status is "unknowable" and seeks the extraordinary remedy of replacing him on her own "opinion" of his unfitness.

22. Absent from the plaintiff's motion is what Mr. Van Blaricom says his status is. First, he has not evidenced any abandonment of the case. To the contrary, after the completion of testimony on January 30, Mr. Van Blaricom reiterated his willingness to continue the deposition and said that he would waive any additional fees associated with its continuation. Doc. 79-1, at 42/7-43/17.

23. Similarly absent is any competent evidence that Mr. Van Blaricom is unavailable because of a physical or mental disability. Mr. Van Blaricom does not say this. Nor does any competent, treating healthcare provider.

24. While the plaintiff makes much of Mr. Van Blaricom's visible frailty, this is not a surprise: He is 85 years old. See *Black and White and Seen All Over*, SEATTLE TIMES (Mar. 10, 2007), available at *https://www.seattletimes.com/seattle-news/black-and-white-and-seen-all-over/* (giving Mr. Van Blaricom's age in 2007 as 72). Mr. Van Blaricom's age is something the plaintiff should have considered when she hired him two years ago.

25. Nevertheless, Mr. Van Blaricom appeared and testified for approximately 90 minutes. He never requested a break and, in fact, declined one when it was offered. Doc. Doc. 79-1, at 25/25-26/16. As evidenced by the attached 43-page transcript, Mr. Van Blaricom's responses to the questions put to him were appropriate. His testimony was consistent with the opinions in his report, which he rendered prior to the death of his wife and his cat.[1] Mr. Van Blaricom was also well enough on January 30 to cash the Sheriff's check for the fee he required to testify: that is the date the check was presented for payment. Doc. 79-3, at 4 ¶ 15.

26. Additionally, according to the plaintiff's lawyer, Mr. Van Blaricom has an appointment on February 11, a date so far removed from Mr. Van Blaircom's illness on

---

[1] The plaintiff claims that Mr. Van Blaricom "appeared to make statements contrary to his prior opinions." Doc. 77, at 3 ¶ 11. This is incorrect. In his report, Mr. Van Blaricom did not opine that the Sheriff's training, supervision, or discipline of his deputies was deficient in any way. His only criticism was that the Sheriff's training and supervision of a single deputy — Deputy Goepfert — was deficient. Doc. 78-2, at 17 ¶ 16. This, of course, is not a basis for Monell liability.

January 30 that it evidences that he is not and was not acutely unwell, hospitalized, or otherwise medically or mentally unavailable then, nor is he now.

27. Finally, the plaintiff has not presented any evidence that Mr. Van Blaricom has ceased working on his voluminous caseload, something that one would expect were he truly "unfit" because of a prolonged, serious, medical or psychological disability. Unfitness would pertain to all of Mr. Van Blaricom's expert work, not just the DeGraw case. He obviously has not said this. Rather, Mr. Van Blaricom testified in more than 50 separate matters in the last four years and in nine separate matters in the 12 months prior to issuing his report in this case. Doc. 79-3, at 4 ¶ 16. His expert work appears to continue, unabated.

28. Indeed, on January 30, Mr. Van Blaricom said that he would continue to serve in this case: he agreed, on the record, to return to conclude his deposition. Doc. 79-1, at 42/7-10.

29. Simply put, the plaintiff's lawyer's opinion of Mr. Van Blaricom's unfitness is not sufficient good cause or substantial justification necessary to entitle her to obtain a new expert well after the deadline has passed, after discovery has closed, and with dispositive motions due on March 13. Leibel v. NCL (Bahamas) Ltd., 185 F. Supp. 3d 1354, 1356 (S.D. Fla. 2016).

30. Whether to permit the plaintiff to substitute an expert is within the Court's discretion but, typically, is permitted only "when unexpected events prevent the designated expert from testifying at trial." Leibel, 185 F. Supp. 3d 1354, 1356 (S.D. Fla. 2016).

31. Nothing unexpected, let alone debilitating to the point of rendering a witness truly unavailable, occurred here. This is not a case where the expert is has quit, died, or otherwise become unavailable.

32.     Rather, this is a case like Taylor v. Dean, "where a party attempts to substitute testimony from a new expert 'as makeup for initially inadequate or incomplete preparation.'" No. 5:05-cv-397-OC-10GRJ, 2007 WL 7922152, at *4 (M.D. Fla. Jan. 19, 2007).  However, the Taylor Court found that merely being a weak witness or testifying unexpectedly were not good cause or substantial justification for disclosing an additional expert.  Taylor, 2007 WL 7922152, at *4.

33.     Indeed, cases in this District that have permitted the substitution of an expert did so, first, on a finding of unavailability (which is not the case here) and, second, only under the condition that the new expert's opinions are limited to those of the old expert. See Southern Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn, Nos. 2:11-cv-377-99SPC LEAD, et seq., 2013 WL 2711961, at *2 (M.D. Fla. June 11, 2013) (permitting substitution only on moving party's representation to Court that new expert's opinions would "mirror" those of the old expert).  See also Harris Corp. v. Ruckus Wireless, Inc., No. 6:11-cv-618-ORL-41KRS, 2015 WL 3883948, at *7 (M.D. Fla. June 24, 2015) (denying motion to substitute where, among other things, the moving party sought "an entirely new expert with entirely new testimony.").

34.     Put another way, substituting experts does not get the moving party new opinions.  It is not a curative for a bad witness, unhelpful testimony, fraught relationships, buyers' remorse, or poor preparation.  Leibel, 185 F. Supp. 3d at 1357 (citing cases).  See also, e.g., Crandall v. Hartford Cas. Ins. Co., No. CV 10-00127-REB, 2012 WL 6086598, at *3 (D. Idaho Dec. 6, 2012) (denying motion to substitute expert witness when the impetus for the motion was plaintiff's fear that the current expert's opinions would not withstand summary judgment).

35. This case presents a situation where the expert was merely not at his best at his deposition: he thought he was "coming down with something":

> I'm a lot better than this. Giving depositions is something I've done hundreds of times and I'm just not doing worth a damn today.

Doc. 79-1, at 42/12-14. That is not the language of incurable unavailability.

36. Confronted with these circumstances, the undersigned counsel did the professional and humane thing — he offered to continue the deposition until a time when the expert felt better, so long as counsel agreed that it would be continued, cooperate to seek the necessary extension of deadlines from the Court to enable this, and bear the financial burden associated with the continuation.

37. Now, the plaintiff seeks to jettison Mr. Van Blaricom, who she failed to provide with any documents concerning the Sheriff's training, supervision, or discipline of his deputies, and start fresh with a new expert and, presumably, brand new opinions. This is highly prejudicial to the defendants not only because it disingenuous and uses Mr. Van Blaricom as some kind of decoy to ferret out the fatal flaws in her case, but also because the defendants' experts have already rendered their opinions, based on and relying on what Mr. Van Blaricom wrote in his report. Furthermore, the defense experts have all been deposed and the defendants would face the prospect — and significant time and expense — of starting anew with their experts once they learn what the plaintiff's new, late-disclosed expert's opinions are. The plaintiff should not be permitted to use her expert's not feeling well on January 30 as a convenient excuse to gain tactical advantage and remedy the legal insufficiencies in Mr. Van Blaricom's report and testimony.

38. The plaintiff already obtained the relief to which she is fairly entitled — the agreement to continue Mr. Van Blaricom's deposition to a time when he felt better. She now rejects this and wants more. The plaintiff's unwillingness to inquire of Mr. Van Blaricom's status, to bring forth evidence from Mr. Van Blaricom or an actual treating doctor to support her motion, or to even await the result of his February 11 appointment evidences that this is just sharp tactics and gamesmanship to try to cure the substantive deficiencies in his report and testimony. If there were any doubt, the plaintiff's refusal to commit to limiting any new expert's opinions to those offered by Mr. Van Blaricom, and to limit the scope of the materials sent to that new expert to those she disclosed to Mr. Van Blaricom, make it plain that the motion has nothing to do with Mr. Van Blaricom's purported "unfitness," but rather is intended as a vehicle to create new opinions and testimony that she hopes can stave off summary judgment. Her motion should be denied.

## IV. CONCLUSION

For the reasons set forth above the Court should deny the plaintiff's motion and order a date certain by which Mr. Van Blaricom shall resume and conclude his deposition. On resolution of this motion and the selection of a date on which to conclude Mr. Van Blaricom's deposition, the defendants will then petition the Court for the appropriate relief from the impending March 13 dispositive motions deadline. The defendants further pray that the Court grant any such other relief deemed just and necessary.

Respectfully submitted,

/s/ Paul G. Rozelle
Paul G. Rozelle
Senior Associate Counsel
FBN: 77948
10770 Ulmerton Road
Largo, FL 33779
Telephone: (727) 582-6274
Facsimile: (727) 582-6459
*prozelle@pcsonet.com*
*amarcott1@pcsonet.com*
Attorney for the defendants

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on February 7, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Paul G. Rozelle