UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Julie V. DeGraw,
    Plaintiff,

vs.                        Case No.: 8:18-cv-02116-T36-SPF

Bob Gualtieri, et al.,
    Defendants.
_____/

## DEPUTY GOEPFERT'S STATEMENT
## OF UNDISPUTED MATERIAL FACTS

Under § 7(b) of the Amended Case Management and Scheduling Order, Dkt. 83, at 2, Deputy Goepfert files this statement of undisputed, material facts in support of his motion for summary judgment, Dkt. 97. The undersigned counsel conferred with counsel for the plaintiff in good faith on this statement of undisputed material facts. Counsel for the plaintiff stated in writing that each of the following statements is accurate but objected to this document as "incomplete and misleading."

    1.    In the early morning hours of September 7, 2016, Julie DeGraw called 911 because her husband, Donald DeGraw, woke up screaming after what she thought was a nightmare or a seizure. Dkt. 96-2, at 21/2-15.[1]

    2.    Julie told the 911 operator that there were guns in the house. Id. at 36/21-37/20 & Ex. 27 (1st call) 4:08-4:54.

---

[1] Deposition citations are in the form of [page(s)]/[line number(s)]. An index to the record evidence in support of this motion is filed as Dkt. 96-1.

3. Because of the report of firearms, the responding paramedics called deputies for assistance and staged on arrival at the DeGraw home, waiting for the all-clear that it was safe to enter and treat DeGraw. Dkt. 96-3, at 53/1-55/9 & Ex. 30, at 3-4; Dkt. 96-4, at 10/1-10 & 15/15-24.

4. When deputies arrived at the DeGraw home, DeGraw was no longer screaming and yelling, he was not disoriented or confused, and he complied with all instructions given to him, including that he come downstairs. Dkt. 96-2, at 27/18-22 & 28/20-25; Dkt. 96-4, at 19/15-20/2 & Ex. 35, at 1; Dkt. 96-5, at 8/19-9/8 & Ex. 36, at 3.

5. After deputies declared the scene safe, paramedics entered, evaluated DeGraw, determined that he was alert and oriented, and ultimately left when DeGraw refused, against medical advice, to be further evaluated at the hospital. Dkt. 96-2, at 28/11-19; Dkt. 96-3, at 20/14-23, 24/17-25/11 & Ex. 30, at 4-6.

6. Later that same day, Julie called 911 a second time and said DeGraw was having a seizure. Dkt. 96-2, at 39/8-40/13 & Ex. 27 (2d call) 0:47-0:52.

7. The 911 operator asked Julie — who is a nurse — to go upstairs and check on DeGraw, but Julie refused and told the operator that DeGraw had been "ready to attack" her earlier and that she was scared. Id. at 6/11-12, 41/7-12, 43/6-10, 67/14-20 & Ex. 27 (2d call) 1:43-1:53, 3:01-3:16.

8. Once again, because of the presence of guns in the house, EMS staged and called for deputies to respond and give the all-clear that it was safe to treat

DeGraw. Dkt. 96-3, at 34/9-35/8, 55/6-9; Dkt. 96-6, at 45/17-46/12; Dkt. 96-7, at 89/11-18; Dkt. 96-8, at 117/11-16.

9. Deputy Goepfert and Deputy Martinez were the first deputies to arrive. Dkt. 96-7, at 102/12-14. Neither had been present on the earlier call. Dkt. 96-2, at 64/9-14; Dkt. 96-8, at 55/10-11.

10. On arrival, both deputies spoke with Julie. Dkt. 96-2, at 15/24-16/25, 47/12-19, 69/17-25; Dkt. 96-7, at 91/15-92/5; Dkt. 96-8, at 37/5-17.

11. Julie told Deputy Goepfert and Deputy Martinez that DeGraw was a combat veteran who had PTSD, that he may have had a seizure, and that he was upstairs in the bedroom. Dkt. 96-2, at 15/24-16/25, 44/1-45/5, 47/12-19, 69/17-25; Dkt. 96-7, at 20/1-11, 91/15-92/5, 104/18-105/4; Dkt. 96-8, at 37/5-17, 59/1-7.

12. As Deputy Goepfert ascended the stairs, Julie added that there were weapons "throughout" the room and said, "I just want to let you know that he does sleep with a gun under his pillow." Dkt. 96-2, at 44/1-45/5; see also id. at 15/9-16/10, 45/24-46/10, 69/7-16 (same); Dkt. 96-7, at 57/17-58/9, 91/15-92/5, 107/4-17, 108/4-17 (same); Dkt. 96-8, at 37/5-17 (same).

13. Deputy Goepfert responded, "Thank you for letting me know." Dkt. 96-2, at 44/1-12.

14. Deputy Goepfert and Deputy Martinez went upstairs, armed with their tasers, which they had unholstered after Julie told them about the gun under

DeGraw's pillow. Dkt. 96-2, at 15/9-23; Dkt. 96-7, at 35/12-36/2, 115/17-117/2; Dkt. 96-8, at 112/1-6.

15.  Deputy Goepfert stopped at the doorway and saw DeGraw laying in bed, clad only in his underwear. Dkt. 96-8, at 37/18-38/5, 41/12-18.

16.  DeGraw's head was on the pillow and his hands were on the bed, touching the pillow. Id. at 118/3-18.

17.  Deputy Goepfert looked to see whether DeGraw was injured and saw that DeGraw had old, dry blood in his mouth. Id. at 36/12-22, 39/8-15.

18.  Deputy Goepfert also saw gun cases in the room and a knife on the floor. Id. at 40/17-41/5, 82/22-83/2.

19.  From the doorway, Deputy Goepfert identified himself as a deputy, asked DeGraw what was wrong, and told DeGraw that they were there to help him and wanted to get him out of the room. Dkt. 96-7, at 112-2/14. See Dkt. 96-2, at 43/11-17, 47/12-19, 48/16-49/1, 52/8-17, 68/13-24.

20.  Deputy Goepfert told DeGraw, "We are here for you. We are here to make sure you're okay." Dkt. 96-8, at 39/6-8; see also Dkt. 96-7, at 22/3-18, 112/1-9, 117/5-12 (same).

21.  Deputy Goepfert also told DeGraw, "We have paramedics outside that need to help you." Dkt. 96-8, at 50/25-51/6. See Dkt. 96-7, at 22/3-18 (same).

22.  Remembering that Julie had said that DeGraw was a veteran, Deputy Goepfert also said to DeGraw, "Hey, look, I was in the Air Force. I was in Desert

Storm, as well. Can we talk about that? What's bothering you?" Dkt. 96-8, at 51/7-21. See Dkt. 96-2, at 16/18-25, 49/12-22 (same).

23. DeGraw did not respond to Deputy Goepfert, other than with screaming and yelling. Dkt. 96-2, at 68/16-19; Dkt. 96-7, at 22/3-18, 112/10-113/1, 117/5-12; Dkt. 96-8, at 36/12-37/4, 45/18-25, 118/22-24.

24. DeGraw reached under the pillow where the gun was. Dkt. 96-8, at 40/17-41/5. He did this several times. Id. DeGraw also reached several times between the bed and the wall. Id. See id. at 53/19-54/10 (same).

25. Deputy Goepfert told DeGraw not to do that, to stop, and to "[l]et me see your hands." Id. See id. at 44/6-24, 53/19-54/10 (same); Dkt. 96-7, at 113/5-13 (same).

26. As DeGraw reached toward the pillow, Deputy Goepfert said to Deputy Martinez, who was providing cover from the other side of the doorway, out of DeGraw's view, that DeGraw was reaching toward the pillow and to "go lethal," meaning that Deputy Martinez should holster his taser and draw his firearm. Dkt. 96-7, at 35/17-36/2, 82/22-83/1, 110/16-111/3, 114/24-115/15, 117/13-118/6, 189/21-190/1. Deputy Martinez did so. Id. at 35/17-36/2, 118/7-9.

27. After Deputy Goepfert gave repeated commands for DeGraw to stop reaching under the pillow and behind the bed and to show his hands, DeGraw complied. Dkt. 96-8, at 44/6-45/7.

5

28. Because DeGraw was laying on the bed close to the gun, Deputy Goepfert wanted to get DeGraw out of the room and away from the gun under the pillow, and so he asked DeGraw to sit up. Dkt. 96-8, at 44/6-24, 53/19-54/3. "Hey, let's get you up and out of here," Deputy Goepfert said to DeGraw, and asked him to come toward him, out of the room. Id. at 51/22-52/6, 139/14-140/10.

29. DeGraw, still screaming, sat up on the far end of the bed, stood up, balled up his fists, and began moving toward Deputy Goepfert. Id. at 41/19-24, 44/6-24, 61/1-21, 62/19-63/1, 80/7-15, 104/5-12, 118/19-24.

30. Deputy Goepfert told Deputy Martinez, who was still outside the room providing cover, that DeGraw was off the bed. Dkt. 96-7, at 35/12-36/2, 114/24-115/15, 118/17-119/12.

31. On hearing this, Deputy Martinez holstered his gun and re-drew his taser. Id. at 35/12-36/2, 114/24-115/15, 118/17-119/12.

32. Deputy Martinez also radioed dispatch and said that DeGraw was noncompliant and that they were issuing verbal commands. Id. at 113/2-16, 119/13-120/14, 134/7-137/3 & Ex. 23.

33. As DeGraw advanced toward Deputy Goepfert, Deputy Goepfert told him, "Stay there. Don't move. Calm down. We are just here to help you." Dkt. 96-8, at 104/2-12. See Dkt. 96-7, at 83/11-16 (same).

34. DeGraw ignored Deputy Goepfert's commands and continued to advance toward him, screaming and yelling, with his fists balled and raised. Dkt. 96-8, at 80/7-15, 120/11-18. See Dkt. 96-7, at 113/9-13.

35. As DeGraw continued to advance toward him, Deputy Goepfert backed up in retreat. Dkt. 96-8, at 120/25-121/7, 122/7-123/3, 147/20-24. See Dkt. 96-7, at 114/24-115/15.

36. Deputy Goepfert stepped backward, closer to the staircase, and continued to plead, "Please, Mr. DeGraw, stay where you are. Stay — do not come towards me." Dkt. 96-7, at 26/1-18.

37. DeGraw continued to advance and Deputy Goepfert deployed the taser, which struck DeGraw in the chest. Id; Dkt. 96-8, at 63/15-18, 82/1-9, 120/11-121/7, 122/7-123/3.

38. Deputy Goepfert did not aim the taser at DeGraw's chest. Dkt. 96-8, at 81/23-82/21. Deputy Goepfert's intended target was DeGraw's torso and leg, but — in retreat and turning away from DeGraw as he pulled the trigger — he missed. Id. See id. at 122/7-123/3, 147/25-148/21.

39. DeGraw had advanced to within about three-and-a-half feet of Deputy Goepfert when Deputy Goepfert pulled the trigger on the taser. Id. at 63/10-14, 82/10-15, 122/7-123/9.

40. Just under three minutes had passed from when Deputy Goepfert first made contact and spoke with DeGraw until when he activated the taser. Id. at 102/5-104/1.

41. In response to the taser, DeGraw braced and tensed up, took a couple of shuffle-steps toward Deputy Goepfert, and fell to the ground. Dkt. 96-7, at 42/21-43/20, 81/9-16, 121/5-17, 122/4-123/1, 181/13-182/15; Dkt. 96-8, at 63/19-25.

42. Deputy Goepfert cut the initial taser activation short. Dkt. 96-8, at 123/10-13. The taser only ran for two seconds. Id. at 104/13-105/4; Dkt. 96-9, at 105/4-7. See also Ex. 14 (reporting from the taser event log that the initial activation of the taser lasted two seconds, from 16:01:04 until 16:01:06, when the safety was put on).

43. If the trigger is pulled on a taser, ordinarily it will run for five seconds. Dkt. 96-7, at 147/6-9; Dkt. 96-8, at 129/9-11.

44. However, Deputy Goepfert interrupted the initial activation of the taser by putting the safety on after only two seconds, which caused the taser to stop delivering electricity to DeGraw. Dkt. 96-7, at 144/13-145/3; Dkt. 96-8, at 104/13-105/4, 123/10-13.

45. Deputy Goepfert testified that he short-cycled the taser because
> I was just trying to gain some compliance and then figure out what the problem was. So I cut it short so I could

>evaluate, assess, speak to him a little bit more and
>hopefully calm him down.

Dkt. 96-8, at 123/14-21.

46. Deputy Goepfert turned the taser off so he could evaluate DeGraw and talk to him some more: "Sir, stay where you're at. Are you okay? We need to get through this. We just need to get you some help." Dkt. 96-8, at 65/11-21.

47. After the taser cycled off, DeGraw clenched his fists, yelled, and started to get up. Dkt. 96-8, at 123/25-124/3. See Dkt. 96-7, at 122/4-14.

48. Deputy Goepfert said to DeGraw, "Stay on the ground. Don't get up. We don't want to hurt you." Dkt. 96-8, at 124/4-6. See Dkt. 96-7, at 170/2-21, 171/17-19 (same).

49. Deputy Martinez also tried to communicate with DeGraw, telling him not to get up, to stay on the ground, and that they were only there to help him, but DeGraw just continued to scream and yell aggressively. Dkt. 96-7, at 23/24-24/4, 25/9-20, 30/14-31/7, 32/13-33/13, 170/2-21, 171/17-19.

50. DeGraw did not comply with the command to stay on the ground and started to stand up. Dkt. 96/8, at 124/7-8. See Dkt. 96-7, at 170/22-171/1.

51. Deputy Goepfert then activated the taser a second time. Dkt. 96/8, at 124/7-10.

52. Deputy Goepfert cut the second taser activation short, too. Dkt. 96/8, at 125/4-5.

9

53. The taser only ran for three seconds the second time before Deputy Goepfert stopped it. Dkt. 96/8, at 124/24-125/3. See id. at 106/16-107/3 (same); Dkt. 96-7, at 29/12-17, 148/13-149/5 (same). See also Ex. 14 (reporting from the taser event log that the second activation of the taser lasted three seconds, from 16:01:08 until 16:01:11, when the safety was put on).

54. After he stopped the second taser activation, Deputy Goepfert and Deputy Martinez again told DeGraw, "Stay on the ground. Don't get up. We just need to evaluate you. We are not here to hurt you." Dkt. 96/8, at 125/14-22. See Dkt. 96-7, at 30/14-31/7.

55. Once again, DeGraw clenched his fists, yelled, and started to get up. Dkt. 96/8, at 125/9-13.

56. Deputy Goepfert activated the taser for the third time, but again he cut the activation short and the taser only ran for one second. Dkt. 96-8, at 108/1-6, 125/23-126/9. See Dkt. 96-7, at 29/12-17 (same). See also Ex. 14 (reporting from the taser event log that the third activation of the taser lasted one second, from 16:01:16 until 16:01:17, when the safety was put on).

57. After the third taser activation, Deputy Goepfert assessed DeGraw and observed that he was not out of breath. Dkt. 96/8, at 126/13-20.

58. DeGraw yelled loudly and "kind of groan[ed]." Dkt. 96/8, at 126/13-20. Deputy Goepfert further observed that DeGraw "seemed very angry and very

intense." Id. Cf. Dkt. 96-2, at 50/22-51/9 (noting that DeGraw yelled, "Motherfucker" during the encounter).

59. Deputy Goepfert and Deputy Martinez again told DeGraw to stay down and not get up. Dkt. 96-7, at 30/14-31/7; Dkt. 96/8, at 126/6-20. See Dkt. 96-2, at 53/12-17 (same).

60. Deputy Goepfert activated the taser a fourth time for the full five seconds. Dkt. 96-8, at 126/21-24. See Dkt. 96-7, at 29/12-17 (same). See also Ex. 14 (reporting from the taser event log that the fourth activation of the taser lasted five seconds).

61. Deputy Goepfert assessed DeGraw again — he assessed DeGraw every time the taser was activated — and told him to stay on the ground and not to get up. Dkt. 96-8, at 126/25-127/5, 128/11-14.

62. DeGraw complied "[f]or a short period of time," but then, yelling, he tried to get back up and fight. Dkt. 96-8, at 127/4-8, 128/1-10.

63. The download of the taser event log shows that the taser was activated a fifth and final time, for one second, about a minute later. See Dkt. 96-7, at 29/12-17. See also Ex. 14 (reporting from the taser event log that the fifth activation of the taser lasted one second, from 16:02:37 until 16:02:38, when the safety was put on).

64. Deputy Goepfert does not recall the fifth and final, one-second activation. Dkt. 96/8, at 128/20-23.

65. However, DeGraw was still screaming and fighting after the last taser activation. Dkt. 96/8, at 129/12-16.

66. In sum, DeGraw was exposed to the taser five times for a total of 12 seconds over a duration of 94 seconds. See Ex. 14 (noting beginning of the first activation at 16:01:04 and the conclusion of the fifth activation at 16:02:38). Dkt. 96-7, at 27/23-28/7.

67. Deputy Goepfert and Deputy Martinez had been waiting for backup before entering the room and attempting to secure DeGraw in handcuffs. Dkt. 96-8, at 65/11-21, 68/3-69/3, 125/14-22, 144/3-10.

68. Sgt. Charles Street arrived on scene. Dkt. 96-7, at 126/23-127/15; Dkt. 96-8, at 68/3-13.

69. Sgt. Street had become aware of the call for service at the DeGraw residence when it came in as an assist-other-agency for the fire department and he heard dispatch say that it was the second time that fire-rescue had been to that address that day. Dkt. 96-10, at 5/22-6/17.

70. Arriving on-scene, Sgt. Street entered the DeGraw residence and, from the bottom of the staircase, heard Deputy Goepfert announce, "Taser," and the sound of the taser being activated. Dkt. 96-10, at 10/3-15, 12/20-25.

71. Sgt. Street went upstairs and radioed for the dispatcher to clear the air — i.e., that the radio channel be dedicated to this call. Dkt. 96-7, at 138/13-23; Dkt. 96-10, at 12/20-13/7. On Sgt. Street's radio transmission, DeGraw can be

heard continuously growling and grunting. Dkt. 96-7, at 138/24-139/2; Dkt. 96-8, at 133/23-134/18; Dkt. 96-10, at 74/3-15; Ex. 23, at 1:25-1:28.

72. Sgt. Street spoke with Deputy Martinez, who told him that the taser was ineffective, DeGraw kept a gun under his pillow, and there were weapons in the room. Dkt. 96-7, at 126/23-127/15; Dkt. 96-10, at 12/20-13/18, 22/1-12, 25/2-7.

73. Sgt. Street saw DeGraw flailing on the ground in the small, cluttered, poorly lit room "grunting very loudly. Like a guttural type of sound, very loud." Dkt. 96-10, at 24/6-18, 29/23-30/14, 52/7-17, 56/14-57/1, 59/5-10. See Dkt. 96-7, at 40/22-24, 157/23-158/1. See also Ex. 18 (photograph of room).

74. He also saw two rifle cases in the room and a knife on the nightstand. Dkt. 96-10, at 24/6-18, 25/2-8, 27/9-18. Cf. Dkt. 96-7, at 153/20-154/8 (Deputy Martinez saw weapons cases when he entered the room).

75. Sgt. Street confirmed from what he saw and heard that the taser was not fully effective, a conclusion that Deputies Goepfert and Martinez had also arrived at. Dkt. 96-10, at 25/2-11, 57/2-13. See Dkt. 96-7, at 19/11-17, 42/17-43/6, 45/9-19, 123/2-13; Dkt. 96-8, at 63/19-25.

76. The deputies began to remove some of the clutter from the bedroom to clear an area where they could get in the room and try to get DeGraw secured. Dkt. 96-10, at 25/2-13, 55/19-23.

77. Deputy Goepfert handed Sgt. Street a step ladder and Sgt. Street tossed it out of the room. Dkt. 96-7, at 40/16-21; Dkt. 96-10, at 24/6-22, 25/2-17, 26/9-12.

78. Deputy Martinez and Sgt. Street also removed the nightstand from the room and Sgt. Street kicked the knife out of the room, which had fallen on the floor. Dkt. 96-10, at 27/23-28/13, 28/20-29/6.

79. Sergeant Street and Deputy Martinez entered the room and began trying to handcuff DeGraw. Dkt. 96-7, at 38/24-39/6; Dkt. 96-10, at 34/14-35/21.

80. When Sgt. Street took hold of DeGraw, DeGraw tensed, "[H]e was fighting us. We were fighting for his arm to get control or maintain control of him. . . . It took both of us to maintain control over that wrist before we could . . . get one handcuff on him." Dkt. 96-10, at 60/3-14. See id. at 60/20-61/3 (same); Dkt. 96-7, at 128/20-129/12.

81. While Sgt. Street and Deputy Martinez worked to handcuff DeGraw, Deputy Goepfert attempted to control DeGraw's feet, which DeGraw was kicking and thrashing. Dkt. 96-8, at 69/14-21, 129/20-130/11; Dkt. 96-10, at 38/10-39/3, 60/20-61/3. See Dkt. 96-7, at 48/2-6, 133/24-134/2.

82. With Sgt. Street holding DeGraw's left arm, Deputy Martinez placed the first handcuff on it. Dkt. 96-7, at 37/20-24; Dkt. 96-10, at 36/4-12, 60/3-19.

83. DeGraw was holding his right arm under him tightly and Sgt. Street and Deputy Martinez worked to free that arm but DeGraw resisted continuously and Sgt. Street had to use both hands to get DeGraw's right arm out from under him and pull DeGraw's arms together. Dkt. 96-10, at 36/4-22, 63/2-25, 64/23-65/1, 65/2-12. See Dkt. 96-7, at 46/14-47/1, 49/17-20, 128/20-129/12, 131/13-22. See also

14

Dkt. 96-8, at 72/2-10 (DeGraw was screaming and thrashing during the handcuffing).

84. Deputy Martinez told DeGraw to "give me your hand," Dkt. 96-10, at 82/1-13, but, at one point, as Deputy Martinez tried to place the second handcuff on DeGraw, DeGraw grabbed Deputy Martinez's hand and the loose handcuff with his free hand. Dkt. 96-7, at 129/13-130/11; Dkt. 96-8, at 129/20-130/11.

85. Throughout the handcuffing, DeGraw was yelling and screaming. Dkt. 96-7, at 131/23-25, 132/10-13, 132/21-23.

86. Working together, Sgt. Street and Deputy Martinez were able to place the second handcuff on DeGraw. Dkt. 96-7, at 132/24-133/1; Dkt. 96-10, at 38/10-39/3, 63/2-25.

87. After the second cuff went on, Sgt. Street, winded from the struggle to handcuff DeGraw, assessed DeGraw. Dkt. 96-10, at 65/13-21, 79/9-80/3. See Dkt. 96-7, at 158/2-3, 159/19-22, 160/10-14.

88. Sgt. Street spoke to DeGraw and verified that he was ok. Dkt. 96-10, at 40/8-17.

89. DeGraw's lips were moving, he was breathing steadily and regularly, and he was moaning, groaning, and grunting. Dkt. 96-7, at 158/18-159/3, 160/15-18, 161/9-16, 186/2-15; Dkt. 96-8, at 130/19-22, 138/20-25; 139/7-9; Dkt. 96-10, at 39/23-40/3, 65/22-66/2, 80/9-13, 82/20-83/3; Dkt. 96-11, at 27/3-8, 37/7-15.

90. At Deputy Goepfert's suggestion, they rolled DeGraw onto his side, placing him in the recovery position. Dkt. 96-10, at 39/23-40/17. See Dkt. 96-7, at 50/11-51/4, 158/18-159/3, 163/24-164/4.

91. As they checked with each other to make sure they, too, were ok, the deputies noticed that DeGraw's breathing had changed. Dkt. 96-7, at 52/8-17, 157/7-14, 161/12-20; Dkt. 96-8, at 139/1-6; Dkt. 96-10, at 40/18-20, 79/9-17, 83/10-24.

92. DeGraw's lips were still moving; someone took his pulse and got one. Dkt. 96-10, at 40/21-41/7.

93. Julie asked from downstairs if DeGraw was still breathing and Deputy Martinez said that he was. Dkt. 96-2, at 53/18-20.

94. Sgt. Street did a sternum rub and tried to revive DeGraw. Dkt. 96-10, at 40/8-41/7. See Dkt. 96-7, at 51/9-14; Dkt. 96-11, at 31/13-22.

95. Deputies Goepfert and Martinez, too, assessed DeGraw and tried to revive him. Dkt. 96-2, at 17/1-12, 51/10-19, 53/12-17; Dkt. 96-7, at 157/15-22, 159/25-160/2, 162/17-25, 163/7-17; Dkt. 96-8, at 70/20-71/16.

96. DeGraw did not respond. Dkt. 96-7, at 163/18-23; Dkt. 96-11, at 31/23-24.

97. Sgt. Street told Deputy Keith Baldwin — who had just arrived and was in the hallway[2] — to summon the paramedics, which he did. Dkt. 96-10, at 41/12-22; Dkt. 96-11, at 29/14-18.

98. After the paramedics were summoned, Sgt. Street lifted the pillow up and found the gun, with the muzzle pointed toward the door. Dkt. 96-10, at 45/8-21. See Dkt. 96-8, at 145/4-9 (same).

99. The gun was loaded. Dkt. 96-12, at 8 (PCSO 001128, noting presence of six rounds in the magazine).

100. Sgt. Street removed the handcuffs as the paramedics came into the room. Dkt. 96-10, at 42/2-9.

101. Paramedics arrived quickly, CPR was begun, and DeGraw was transported to the hospital where he died later that day. Dkt. 96-2, at 55/14-56/10; Dkt. 96-3, at 30/6-8; Dkt. 96-7, at 165/25-166/12.

102. The medical examiner found the cause of death to be excited delirium syndrome with contributing causes of hypertensive heart disease, supratheraputic

---

[2] Deputy Baldwin became aware of the incident at the DeGraw home when he heard "yelling or screaming" on the radio channel, before Sgt. Street closed that channel for emergency traffic only. Dkt. 96-11, at 19/7-17. Deputy Baldwin responded with lights and sirens to the DeGraw home. Id. at 20/11-15.
Deputy Baldwin's in-car video camera remained on when he went into the DeGraw home. Ex. 22, at 16:08:53 (showing Deputy Baldwin stopping in front of the DeGraw residence). Deputy Baldwin's microphone captured audio from inside the home, starting toward the end of the handcuffing and continuing until when he muted the microphone after summoning paramedics. See Dkt. 96-11, at 25/15-20 (describing what was transpiring when Deputy Baldwin arrived); Ex. 22, at 16:10:24 (summoning paramedics); id. at 16:10:55 (muting microphone).

venlafaxine level, and electromuscular disruption device (i.e., the taser). Dkt. 96-12, at 11 (PCSO 001311, reporting autopsy findings).

103. None of the deputies ever put body weight on DeGraw: They were never on top of him, did not sit on him, and did not straddle him. Dkt. 96-7, at 47/15-16, 49/21-22, 160/22-161/8; Dkt. 96-10, at 36/23-37/8, 37/20-25, 61/21-62/19, 66/10-14.

104. In addition to the loaded gun under the pillow, the rifle cases (both of which contained rifles), and the knife, DeGraw's room contained two other handguns in cases toward the foot of the bed, shotguns, and magazines[3] and there was ammunition on the floor. Dkt. 96-10, at 50/24-51/15; Dkt. 96-12, at 5 (PCSO 001059, inventory of items removed from room where incident occurred); Dkt. 96-12, at 8-9 (PCSO 001128-29, further identifying firearms removed from the room).

Respectfully submitted,

/s/ Paul G. Rozelle
Paul G. Rozelle
Senior Associate Counsel
FBN: 75948
10750 Ulmerton Road
Largo, FL   33778
Telephone:  (727) 582-6274
Facsimile:   (727) 582-6459
*prozelle@pcsonet.com*
*amarcott1@pcsonet.com*
Attorney for Deputy Goepfert

---

[3] The magazines that were found in DeGraw's bedroom are spring-loaded containers for feeding ammunition into the breach of a semi-automatic firearm, not literature (although there was that kind of magazine, too, in the room). Dkt. 96-12, at 8 (PCSO 001128, noting presence of both gun magazines and gun literature).

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on July 10, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                           /s/ Paul G. Rozelle