<pre>
 1                UNITED STATES DISTRICT COURT

 2                MIDDLE DISTRICT OF FLORIDA

 3                     TAMPA DIVISION

 4          CASE NO.:  8:18-CV-2116-WFJ-SPF

 5

 6   JULIE V. DEGRAW, AS PERSONAL REPRESENTATIVE OF THE

 7   ESTATE OF DONALD C. DEGRAW, DECEASED,

 8              PLAINTIFF,

 9         VS.

10   BOB GUALTIERI, IN HIS INDIVIDUAL AND SUPERVISORY

11   CAPACITY AS PINELLAS COUNTY SHERIFF, AND GREGORY

12   GOEPFERT, IN HIS INDIVIDUAL CAPACITY AS A

13   PINELLAS COUNTY DEPUTY SHERIFF,

14              DEFENDANTS.

15   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

16   DEPONENT:    PETER LAMBORGHINI

17   DATE:        OCTOBER 3RD, 2019

18   TIME:        1:30 P.M. TO 2:15 P.M.

19   LOCATION:    COMPASS REPORTING GROUP

20                3000 GULF-TO-BAY BOULEVARD, #500

21                CLEARWATER, FL  33759

22   REPORTER:    KIMBERLY HAMMOCK

23                NOTARY PUBLIC

24                STATE OF FLORIDA AT LARGE

25              COMPASS REPORTING GROUP

              D & D REPORTING SERVICE
</pre>

```
 1   A P P E A R A N C E S:

 2   For the Plaintff:        INGUNA VARSLAVANE-CALLAHAN, ESQ.

 3                            CALLAHAN LAW FIRM, LLC

 4                            449 CENTRAL AVENUE, #203

 5                            ST. PETERSBURG, FL  33701

 6

 7

 8   For the Defendant:      PAUL G. ROZELLE, ESQ.

 9                            PINELLAS COUNTY SHERIFF'S OFFICE

10                            10750 ULMERTON ROAD

11                            LARGO, FL  33778

12
```

```
13                      I N D E X
```

```
14   Direct Examination by Ms. Callahan .......... 3

15   Cross-Examination by Mr. Rozelle   ..........22
```

```
16

17                    E X H I B I T S
```

```
18    Exhibit                              Marked for

19    Number              Description      Identification

20     P36            Report (Retained)         14

21      D7            Photo (Retained)          23
```

```
22

23

24

25

                 D & D REPORTING SERVICE
```

Thereupon,

**PETER LAMBORGHINI,**

was called upon and after being duly sworn,

was examined and testified as follows:

**DIRECT EXAMINATION**

**BY MS. CALLAHAN:**

     Q.   Good afternoon, sir.

     A.   Good afternoon.

     Q.   Would you please state your full name for the

record?

     A.   Peter John Lamborghini, Junior.

     Q.   Thank you.  As I introduced myself, my name

is Inguna Callahan.  I represent the plaintiff's

family, the DeGraw family, in this matter.  I'll be

asking you questions.  I am sure you're generally

familiar with the deposition procedures?

     A.   Yes, ma'am.

     Q.   Okay.  I'm just going to remind you, as you

can hear, I have a foreign accent.  So if you have a

problem understanding what I'm saying, please let me

know.

     A.   Yes, ma'am.

     Q.   I'll be happy to enunciate better or rephrase

it.  But if you answer my question, I'll assume that

you understood what I asked.

1      A.   Yes, ma'am.

2      Q.   Also, if my question doesn't make sense for

3  whatever reason, please let me know and I'll be happy

4  to repeat or rephrase.

5      A.   All right, ma'am.

6      Q.   And if you need a break for whatever reason,

7  let us know and we'll have a break.

8      A.   Okay.

9      Q.   Where are you currently employed?

10      A.   Pinellas County Sheriff's Office.

11      Q.   What is your position?

12      A.   I'm a road deputy.  Road patrol.

13      Q.   And what does that involve?

14      A.   Answering calls for service.  I work --

15  currently work in the city of Oldsmar.

16      Q.   Okay.  So your territory is limited to the

17  city of Oldsmar?

18      A.   Though I do have county-wide jurisdiction,

19  yes, but that is my assignment right now.

20      Q.   And for how long have you been on road

21  patrol?

22      A.   With the sheriff's office for just over six

23  years.

24      Q.   You started in 2013?

25      A.   Yes, ma'am.

Q.   And since 2013, have you had the same
position?

A.   Yes.  I've always been a road patrol deputy.

Q.   And have you always had Oldsmar?

A.   No.  No, ma'am.

Q.   Since when have you been assigned to Oldsmar?

A.   About four of the years.  Three or four of
the years.

Q.   You said that you respond to calls.  What
kind of calls do you respond to?

A.   Calls that people dial 911 from or the
non-emergency line.  Calls for service.

Q.   What kind of situations do those calls
involve?

A.   From a barking dog to a man with a gun.

Q.   Do your duties also include taking people in
custody?

A.   Yes, ma'am.

Q.   Arrests?

A.   Yes.

Q.   Baker Acting people?

A.   Yes, ma'am.

Q.   Did you also have a chance to respond to
medical calls?

A.   On occasion, yes.

Q.    Are those unusual or infrequent?

A.    They're not on an everyday occurrence, no.

Q.    But they're not unusual?

A.    Correct.

Q.    Did you have a chance to respond to assist other agency calls?

A.    Yes, ma'am.

Q.    Are those calls unusual?

A.    No, ma'am.

Q.    As part of your duties as road patrol, have you had occasions to respond to people who are experiencing PTSD?

A.    Sometimes.

Q.    Have you had more than one experience with those?

A.    In my 19 years, I'm sure I have, yes.

Q.    How about people who are experiencing seizures?

A.    Yes.

Q.    More than one experience?

A.    Yes.

Q.    Whom do you report to?

A.    My current supervisor is Sergeant Roe.

Q.    And whom did you report to in September of 2016?

1      A.    Sergeant Bingham and Corporal Hunter.

2      Q.    So you had this job since 2013.  What did you

3 do before that?

4      A.    I was a law enforcement officer for 19 years

5 throughout the state of Florida.

6      Q.    So where did you work before Pinellas County

7 Sheriff's Office?

8      A.    Right before Pinellas County was the Alachua

9 Sheriff's Office.

10     Q.    How long were you there?

11     A.    Two years.

12     Q.    What were your duties?

13     A.    Road patrol.

14     Q.    In all of your 19 years in law enforcement,

15 has it been as part of a sheriff's office?

16     A.    No, ma'am?

17     Q.    What else did you do?

18     A.    Before Alachua was the St. Lucie County

19 Sheriff's Office.

20     Q.    How long were you there?

21     A.    Four or five years.  Before that was the

22 Lauderhill Police Department in Broward County.  And

23 before that was the Havana Police Department in Gaston

24 County.

25     Q.    I actually know where that is.  I lived in

D & D REPORTING SERVICE

1   Tallahassee for some years.

2        A.    Me too.

3        Q.    What is your educational background?

4        A.    High school graduate with some college.

5        Q.    And when you attended college, what did you

6   study?

7        A.    Criminal justice.

8        Q.    We are here because of an incident that

9   occurred in September of 2016, when you and Deputy

10  Segura responded to Mr. DeGraw's residence.

11       A.    Yes, ma'am.

12       Q.    Do you have an independent recollection of

13  that?

14       A.    Yes, ma'am.

15       Q.    By independent, I mean anything you remember

16  on your own rather than what you recall after

17  consulting some document?

18       A.    Some, yes.

19       Q.    So what do you recall from independent

20  memory?

21       A.    That Deputy Segura and I went in there.

22  Knocked on the door.  Mrs. DeGraw is it?  Mrs. DeGraw

23  answered the door.  We entered.  There was some dog

24  barking.  Then Mr. DeGraw appeared on the second floor

25  balcony yelling at the dogs to shut up.

Q.   Okay.

A.   Deputy Segura and I asked him to come down.
He complied.  He sat on the stairwell.  I believe it
comes down and makes like a U-turn type thing.  He sat
there and I talked to Mr. DeGraw while Deputy Segura
talked to Mrs. DeGraw?

Q.   Do you remember anything else?

A.   We then asked for fire department to come in.

Q.   Did you stay for the duration of the fire
department dealing with him?

A.   Yes, ma'am.

Q.   How come both you and Deputy Segura responded
to this call?

A.   Because Mrs. DeGraw said there was guns in
the house.

Q.   Okay.  So why did the two of you come rather
than just one of you?

A.   I would rather go in having backup when there
is reports of a man with a gun.

Q.   Okay.  Is that standard procedure?

A.   It's usually -- yes, ma'am.  If not more.

Q.   Okay.  How do you determine you need more
than two?

A.   This -- he wasn't actively holding a gun, so
we just sent two.  If we got a call for more backup,

1  then more would have come.

2      Q.  Okay.  So is it the discretion of the

3  deputies and the scene to call for more backup, or is

4  there a policy, procedure that says, you know, this is

5  when two men come in and this is when you need three

6  people?  Something like that?

7        MR. ROZELLE:  Object to the form.  You can

8      answer.

9  BY MS. CALLAHAN:

10      A.  If I want more backup, all I have to do is

11  ask and more will come.

12      Q.  Okay.  Is there, like, a standing order or

13  procedure that requires more than two deputies to be

14  present?

15        MR. ROZELLE:  Object to the form.  You can

16      answer.

17  BY MS. CALLAHAN:

18      A.  I don't know if there's actually a policy and

19  procedure to it.  It's at our discretion if we want

20  more, and then we will we request more.

21      Q.  I guess my question is, you know, is there a

22  situation, like, you know, if you have two people with

23  guns in the house, then you always need three deputies

24  come in.  You know, a situation like that?  Is there

25  any kind of standing policy or procedure that always

1   requires more than two deputies to come in?

2        MR. ROZELLE:  Object to form.  You can

3        answer.

4   BY MS. CALLAHAN:

5        A.   Not to my knowledge.

6        Q.   Okay.  So it's usually -- so it's always

7   someone calls in for backup to get more than two

8   deputies on the scene?

9        MR. ROZELLE:  Objection to form.  And it

10       totally mischaracterizes his testimony.  You can

11       answer.

12       MS. CALLAHAN:  He can clarify if I'm

13       misunderstanding.

14  BY MS. CALLAHAN:

15       A.   It's -- I don't understand beyond when I

16  request more backup, then more will come.  If it's a --

17  if he was actively holding the gun, then more deputies

18  would have came, yes.  But as of now, it was just that

19  he had a bad dream.  He woke up and wasn't acting

20  right, so Deputy Segura and I were the only ones that

21  went.

22       Q.   Okay.  Do you have a recollection if you and

23  Deputy Segura walked in through the front door

24  together?

25       A.   Yes, we did.

1    Q.  Is that also a standard procedure for the two

2  deputies to enter at the same time?

3       MR. ROZELLE:  Objection to form.  You can

4    answer.

5  BY MS. CALLAHAN:

6    Q.  Or wait for the other one to arrive?

7    A.  We went --

8       MR. ROZELLE:  Before you answer, object to

9    the form.  You can answer.

10  BY MS. CALLAHAN:

11    A.  We went into the -- it's normal for us to go

12  in the front door.  If there was something else, we

13  would have called more deputies and they could have

14  surrounded the place.  But from what the call stated,

15  we just went in, Deputy Segura and I.

16    Q.  Okay.  My question was, do you -- obviously

17  you and Deputy Segura were in separate vehicles,

18  correct?

19    A.  Yes, ma'am.

20    Q.  And so you would -- it would be hard for you

21  to arrive simultaneously at the same time, correct?

22       MR. ROZELLE:  Objection to form.  You can

23    answer.

24  BY MS. CALLAHAN:

25    A.  Yes.

1      Q.   So my question was, do you wait for the other

2   deputy to arrive so that you can enter the residence

3   together?  Is that what normally happens?

4           MR. ROZELLE:  Objection to form.  You can

5      answer.

6   BY MS. CALLAHAN:

7      A.   It depends on the call if we go in by

8   ourselves or not.  He waited.

9      Q.   Okay.  So you were the first one to arrive?

10      A.   From my recollection of the call notes, he

11   arrived a few seconds before me.

12      Q.   It looks like you wrote the main report of

13   the incident?

14      A.   Yes, ma'am.

15      Q.   How was that determined which of you is going

16   to write the main report and who is going to write the

17   supplement?

18      A.   It's just pretty much who asked for it.  From

19   what I recall, Deputy Segura had some business to

20   attend to that day, so I took the report.

21      Q.   How is this type of report prepared?  Do you

22   prepare it right after the incident?

23      A.   I called my corporal, advised him of what we

24   had and he said for me to -- I could do it later.

25      Q.   Okay.  Do you -- did you keep any

                D & D REPORTING SERVICE

1   simultaneous notes of the incident?

2       A.   No.  If I did, it was just for their names

3   and date of birth.

4       Q.   Okay.  So then you prepared the actual report

5   at some later time?

6       A.   Later that day, yes.

7       Q.   Do you recall that you prepared it the same

8   day?

9       A.   I did.

10      Q.   So you basically relied on your memory to

11  prepare it?

12      A.   Yes, ma'am.

13           MR. ROZELLE:  Object to the form.  You can

14      answer.

15  BY MS. CALLAHAN:

16      A.   Yes, ma'am.

17      Q.   Do these reports get approved by anyone?

18      A.   The supervisor.  Either Sergeant Bingham or

19  Corporal Hunter.

20      Q.   Let me show you what we marked as Exhibit 36.

21  Have you seen this document?

22      A.   Yes, ma'am.  It looks like my report.

23      Q.   Have you reviewed it lately?

24      A.   Yes.

25      Q.   When did you look at it?

A.    When I was subpoenaed.

Q.    So I have a couple questions about it.

A.    Yes, ma'am.

Q.    First, which shift were you working that day?

A.    It's called Charlie.  And I worked early shift from 6:00 p.m. to 6:00 a.m.

Q.    Then the second box on the first page has response information?

A.    Yes, ma'am.

Q.    It has time call, time dispatched, time arrived, time completed.  Do you see that?

A.    Yes, ma'am.

Q.    How are those generated?

A.    I believe the time dispatched is the time that they send us the call on our computer.  The time arrived is either the time I advised my -- 10/97, which means arrival, or I hit the button on my computer and it will post into the call notes.  Time completed is when I clear the call out on my computer.  And I'm speculating that the time received is what time the dispatchers received the call to 911.

Q.    Okay.  And here you cannot tell from this report whether it was, you know, time arrived was generated by you pushing the button or you calling the dispatch?

1          MR. ROZELLE:  Object to the form.  You can

2     answer.

3   BY MS. CALLAHAN:

4     A.   I do not know from looking at this.

5     Q.   Okay.  And it cannot be deciphered from this

6   report, correct?

7     A.   Correct.

8     Q.   So then if I'm reading correctly, you arrived

9   at 5:22.  And time completed is listed as 5:54, is that

10  correct?

11    A.   Yes, ma'am.

12    Q.   And so time completed, when do you push that

13  button?

14    A.   As I'm leaving, getting back in my patrol

15  car.

16    Q.   Okay.  So you're sitting in the vehicle at

17  the time when you're pushing that button?

18    A.   Yes, ma'am.

19    Q.   Then under subject number two it says,

20  "Oldsmar Fire Rescue, Number 54C?"

21    A.   Yes, ma'am.

22    Q.   And then it says, "Relationship information.

23  Paramedic Young?"

24    A.   Yes, ma'am.

25    Q.   Why do you enter that information?  What is

                 D & D REPORTING SERVICE

1  that based on?

2      A.    That is one of the paramedics that was on

3  scene.

4      Q.    And why is he listed as contact information?

5      A.    It's our policy to get one paramedic that was

6  on scene.

7      Q.    Okay.  Does it mean that you talked to him?

8      A.    Not necessarily, no.

9      Q.    Do you know if you talked to him?

10     A.    Not that I recall.

11     Q.    Can you tell from this report, or do you have

12  a recollection of what information did you have about

13  Mr. DeGraw?  Did it come just from the dispatch?

14     A.    Yes, ma'am.

15          MR. ROZELLE:  Object to the form.  You can

16      answer.

17  BY MS. CALLAHAN:

18     Q.    And you did not talk to the paramedics before

19  entering Mr. DeGraw's residence?

20     A.    No, ma'am.

21     Q.    Then on Page 3, subject three, there is some

22  personal information.  Height is listed as 5'04.  Would

23  that be 5'4"?

24     A.    Yes, ma'am.

25     Q.    And then weight is listed as 130.  That would

be 130 pounds?

A.    Yes, ma'am.

Q.    Where did you get that information?

A.    The height probably came from -- I would be speculating.  The height would probably be coming from his driver's license information.  The weight would probably be me guessing.

Q.    Just from visual?

A.    Yes, ma'am.

Q.    And then eye color and hair color would be from observation?

A.    Yes, ma'am.

Q.    And then you have an analysis information box here.  All the answers are no, correct?

A.    Correct.

Q.    So you listed Marchman Act no, and Baker Act no, is that correct?

A.    Yes.

Q.    Did you make those determinations that he was not subject to either one of those?

A.    Correct.

Q.    Do you make those determinations independent of the paramedics?

A.    Correct.

Q.    On your own?

1      A.   Yes.

2      Q.   So if I remember correctly, you said earlier

3 that you talked to Mr. DeGraw, and Deputy Segura talked

4 to Mrs. DeGraw, is that correct?

5      A.   Yes, ma'am.

6      Q.   Did you hear what Deputy Segura was

7 discussing with Mrs. DeGraw?

8      A.   No, ma'am.  They were in the kitchen.

9      Q.   Then when you were talking to Mr. DeGraw, he

10 was able to communicate with you verbally?

11     A.   Correct.  Yes, ma'am.

12     Q.   Did you have any difficulty getting through

13 to him making him understand you?

14     A.   No, ma'am.  Not from my recollection, no.

15     Q.   Then the last paragraph on the last page

16 says, "We made contact with Julie again and asked if

17 she was in fear of being with Donald.  She advised that

18 she was not."  Were you part of that conversation?

19     A.   Yes, ma'am.

20     Q.   It also states, "She advised us that he did

21 not have history of violent behavior, but an episode

22 about three and a half years ago."  Were you part of

23 that conversation with her, as well?

24     A.   I didn't know what the episode was, but

25 that's what I recall.

1      Q.   Okay.  Did you develop any understanding of

2  what the episode was?

3      A.   I did not, no.

4      Q.   As part of your training at the Pinellas

5  County Sheriff's Office, have you had training in any

6  kind of crisis management?  That kind of stuff?

7          MR. ROZELLE:  Object to the form.  You can

8      answer.

9  BY MS. CALLAHAN:

10     A.   No.  I did have excited delirium training

11 last year.  I did do that.  But as in CIT training, no,

12 ma'am.

13     Q.   I forgot to phrase it CIT training.

14     A.   No.  I have not had CIT.

15     Q.   And excited delirium training you said was

16 last year?

17     A.   I would have to look at my record, but I

18 believe it was within the last two or three years.

19     Q.   Okay.  Do you know if you had such training

20 before September of 2016?

21     A.   Again, I would have to look at my records.

22 I'm sorry.

23     Q.   So you don't remember one way or the other?

24     A.   No, ma'am.

25     Q.   Deputy Segura prepared a supplemental report.

Is that how it's usually done?  If you have two

deputies on the scene, one prepares a primary report

and then there's a supplemental?

        MR. ROZELLE:  Object to the form.  You can

    answer.

BY MS. CALLAHAN:

    A.    Sometimes, yes.

    Q.    Not always?

    A.    Not always, no.

    Q.    What does it depend on?

    A.    The situation.  What transpired.  What each

of us observed.

    Q.    Okay.  And in which situation is a

supplemental report prepared?

    A.    Again --

    Q.    Or required to be prepared?

    A.    Required?  Again, it's going to depend on the

call.

    Q.    Okay.  Did you have any involvement in Deputy

Segura preparing the supplemental report?

    A.    No, ma'am.

    Q.    You did not direct him to prepare one?

    A.    No, ma'am.

    Q.    Do you know if your supervisor did?

    A.    I have no idea.

1     Q.   Did you also review Deputy Segura's report?

2     A.   No, ma'am.

3     Q.   Okay.  Thank you.

4     MS. CALLAHAN:  I think that's all the

5   questions I have.  Thank you very much.

6     MR. ROZELLE:  I think I have one for you.

7              CROSS-EXAMINATION

8 BY MS. CALLAHAN:

9     Q.   Deputy Lamborghini, you mentioned that when

10 you and Deputy Segura entered the residence, Mr. DeGraw

11 came down some stairs from the second floor of the

12 house, is that correct?

13     A.   Yes, sir.

14     Q.   And he came down to a landing, I think you

15 said?

16     A.   Yes.

17     Q.   Can you describe what that was?

18     A.   He came down the stairs.  I want -- from what

19 I recall, it was just -- the back of the house is to

20 the north, I believe, so it would be south.  Then the

21 landing.  Then it comes back to the north like a

22 U-turn, and he sat there.

23     Q.   He sat on the landing itself?

24     A.   Yes.

25     Q.   I'll show you what's been marked as Exhibit 7

in this case.  I'll ask you to take a look at it,
please.

        (At this time Defendant's Exhibit No. 7

         was marked for identification.)

BY MR. ROZELLE:

    A.   It's –– he sat probably on one of these
stairs right here.

    Q.   So taking a look at Exhibit 7, let me just
ask some questions.  Hopefully this will turn up on the
record okay.  Can you see in this photograph where ––
or does this photograph depict the area where Mr.
DeGraw was when you first encountered him in the
residence?

    A.   Somewhere up here.

    Q.   And you're pointing at the extreme upper
left-hand corner of that photograph?

    A.   It could be anywhere up here.

    Q.   On the second floor?

    A.   Yes.

    Q.   Then he comes down the stairs that are the
upper part of this staircase, is that right?

    A.   Yes, sir.

    Q.   And then there's a landing there on the right
middle side of that photograph.  Do you see that?

    A.   Yes, sir.

1     Q.   Is that where he sat, or did he sit below

2   that?

3     A.   He sat below, sir.

4     Q.   Some of the stairs then come down to the

5   landing on the first floor?  It looks like a tile floor

6   there?

7     A.   Yes, sir.

8     Q.   So he just sits on the staircase there?

9     A.   Yes.

10     Q.   And that's where you gave the testimony to

11   Ms. Callahan where you addressed him and had

12   conversation with him?  That's where he was located

13   during that time?

14     A.   When I interviewed him, yes, sir.

15        MR. ROZELLE:  No further questions.  Thank

16   you, sir.

17        MS. CALLAHAN:  No questions.

18        MR. ROZELLE:  He will read if it's ordered.

19        MS. CALLAHAN:  We will order.

20        (At this time the proceedings ended at

21         approximately 2:15 p.m.)

22

23

24

25

              D & D REPORTING SERVICE

```
 1              CERTIFICATE OF REPORTER

 2

 3   STATE OF FLORIDA      )

 4   COUNTY OF PINELLAS    )

 5

 6           I, KIMBERLY HAMMOCK, stenographer, certify

 7   that I was authorized to, and did stenographically,

 8   report to the best of my ability the foregoing

 9   deposition and that the transcript is a true record of

10   the testimony given by the witness.

11           I further certify that I am not a relative,

12   employee, attorney or counsel of any of the parties,

13   nor am I a relative or employee of any of the parties'

14   attorneys or counsel connected with the action, nor am

15   I financially interested in the action.

16           Dated this 26th day of October, 2019.

17

18                   KIMBERLY HAMMOCK

19                   Notary Public State of Florida

20                   My Commission EE 155298

21                   Expires 12-26-2021

22

23

24

25

                 D & D REPORTING SERVICE
```

Michael Segura
October 3, 2019

| A | | | | |
|---|---|---|---|---|

**A**

**a.m** 1:18,18 4:12
27:15
**ability** 24:7,10
28:9
**able** 8:25 19:23
22:10 24:21,23
**Absolutely**
18:16
**accent** 3:13
**access** 24:17
26:8
**accidents** 7:11
**account** 25:2
**accurate** 17:10
18:5
**accurately** 16:25
**Act** 21:23 22:8
**Acted** 21:21
**action** 28:15,16
**activity** 7:12 9:6
**Acts** 27:4
**actual** 15:10,16
18:9
**added** 23:4
**address** 24:6,7,9
24:17 25:14,21
26:5,9,11,17
**advise** 17:20
**advised** 18:19
18:23 20:1
21:11
**advising** 23:9
**agency** 8:2,4
15:13 16:2
27:3
**ago** 3:9 11:21
15:3
**ahead** 20:1
**ailment** 15:24
**and/or** 7:14
**answer** 3:21
8:15 14:14,22
17:7 20:21

21:16 22:19
23:2 25:8,24
26:14
**answered** 22:7
**answers** 22:6
**anyway** 15:25
**approached**
10:25
**approved** 12:21
12:21
**approximately**
4:23 5:6 6:5
27:15
**area** 7:14
**arrival** 18:9
**arrive** 15:22
25:18
**arrived** 10:11,23
16:24 17:11,13
18:4,18 26:9
**arrives** 10:15
**arriving** 10:18
**articulate** 3:15
**asked** 3:22
19:10 21:10,14
**asking** 3:11 8:21
22:7
**aspects** 7:8
**assaults** 27:4
**assess** 24:7
**assessing** 21:23
**assigned** 4:8,9
5:13
**assist** 8:2,3
15:13,19 16:2
27:3
**assistance** 8:18
**assume** 3:21
16:8
**attend** 6:23
**attorney** 28:13
**attorneys** 28:15
**authored** 12:19
**authorized** 28:8

**AVENUE** 2:5
**aware** 7:14

**B**

**B** 2:19
**back** 18:15 19:1
19:7,9 21:5
**Baker** 21:21,23
22:8 27:4
**barking** 19:18
19:19,22
**based** 15:16,17
18:8 21:20
22:2,3 23:8,13
23:15,17 26:20
**Bates** 11:19
**batteries** 27:4
**becoming** 6:2
**began** 5:12
**beginning** 5:9
**believe** 4:25 5:6
6:14 9:9 10:4
10:25 11:14
15:3,7 24:20
27:8
**believed** 19:3,13
**best** 28:9
**better** 3:15
**bike** 6:13
**binder** 11:5,7
**bit** 3:12
**BOB** 1:10
**boss** 13:25
**BOULEVARD**
1:20
**box** 12:20 16:22
17:5,9
**button** 17:19

**C**

**C** 1:7 2:1
**call** 7:20 8:2,4
8:10,11,17
10:7 13:19,23

14:8,16 15:14
15:18 16:2,9
16:23 17:10,12
17:21 18:3
23:8,18,19,25
24:22 25:3
26:4,18,25
27:5
**Callahan** 2:4,16
3:6,10 8:16
11:5,9,13,16
11:22 12:1,5,6
14:15,23 16:17
16:21 17:8
20:22 22:20
22:3,23 24:3,4
25:9,25 26:15
27:8,12
**called** 3:3 7:19
8:1 15:13 16:1
18:23 24:6
25:17,20
**calls** 7:6,10,16
7:17,23 8:22
9:5,10,14 10:6
24:8,18 25:12
**calm** 20:10
**calmed** 20:1
**CAPACITY**
1:11,12
**car** 4:14
**case** 1:4 8:1,24
10:22 13:12
**categorized** 27:6
**cause** 15:9
**CENTRAL** 2:5
**certain** 25:13
**CERTIFICA...**
28:1
**certify** 28:7,12
**chance** 7:22
20:11
**check** 18:25
**choose** 18:1

**circumstances**
22:3 24:24
**city** 4:9 5:12,14
10:3,3,5
**clear** 20:2
**CLEARWAT...**
1:21
**close** 26:23
**closed** 17:12
18:3 26:4,18
26:22
**closing** 18:1
**code** 18:1
**college** 6:21,23
6:24
**come** 10:1 15:23
19:24 20:2
**Commission**
28:21
**community** 7:12
**COMPASS** 1:19
1:25
**complainant**
18:19
**completed** 16:24
17:23,25 18:4
**computer** 17:19
17:20 25:1
**conclusion**
23:11
**conducive** 19:9
**confused** 19:5
**connected** 28:15
**contact** 7:13
11:1 18:18
19:6,16
**contemporane...**
14:9
**conversation**
13:21 22:5,5
**copy** 11:17
12:12
**correct** 10:12
11:14 12:23

14:12 16:8 18:6 20:18,25 21:7,17,18,22 22:11 23:15 25:6,13
**correctly** 8:17 26:12
**counsel** 28:13,15
**county** 1:11,13 2:10 4:5 5:13 24:5 28:5
**couple** 3:9
**COURT** 1:1
**crimes** 7:12
**Criminal** 7:3
**criteria** 21:21 22:8
**Cross-Examin...** 2:17

---
**D**

**D** 2:15
**database** 25:12 26:12
**date** 1:17 12:18 12:21,25 15:11 18:17 26:19
**Dated** 28:17
**dates** 12:25
**day** 9:24 12:17 14:4 15:5 18:6 28:17
**dazed** 19:5
**DECEASED** 1:7
**deducted** 23:14
**deemed** 22:8
**Defendant** 2:9
**DEFENDANTS** 1:14
**DeGraw** 1:6,7 18:14,19,20 22:4
**DeGraw's** 3:10 26:8

**department** 6:3 20:4
**departure** 18:9
**depending** 26:24
**depends** 14:6
**DEPONENT** 1:16
**deposition** 9:19 12:11 28:10
**deputies** 13:14 17:11
**deputy** 1:13 4:7 4:14,18,20 5:9 5:15,23,24 6:2 7:5,9,24 8:1 9:20 10:1,9 11:22,24 13:4 13:8,10 14:1 18:5,8 19:16 21:12,14 22:15 25:11
**describe** 20:17
**Description** 2:21
**determination** 10:19
**determined** 13:18,20
**dialogue** 19:23
**dialogues** 22:11
**different** 10:18 14:16 18:7 24:19 27:5
**direct** 2:16 3:5 23:4
**disorder** 9:11 18:21 23:10,12
**dispatch** 16:10 17:20
**dispatched** 16:24 17:11
**DISTRICT** 1:1 1:2
**DIVISION** 1:3

**documented** 13:11 17:15
**documents** 9:18 11:17
**dog** 19:19,21
**dogs** 19:18,18,21
**doing** 6:8,15
**Donald** 1:7 18:20,24 19:3 19:4,10,20,23 19:25 21:4,8 21:11,21 22:5 22:5,8,11,14 22:17,24 23:10
**downstairs** 19:24,25 22:17 22:21
**dream** 23:13
**driving** 24:24
**due** 15:20 19:13
**duly** 3:3
**Dunedin** 5:12

---
**E**

**E** 2:1,1,15,19
**earlier** 18:23
**education** 6:21
**EE** 28:21
**either** 12:4 17:19
**employed** 4:3 5:8
**employee** 28:13 28:14
**ended** 13:22 27:14
**enforcement** 15:22 20:11 21:1
**entered** 22:13 22:14
**entire** 5:11 20:6
**episode** 18:23 19:14 22:23,24

22:25 23:7,16
**escalate** 20:12
**ESQ** 2:3,9
**ESTATE** 1:7
**evaluation** 21:20 21:20
**evening** 4:10,11
**event** 4:2 15:10
**events** 9:23
**everybody** 20:24
**Examination** 2:16 3:5
**examined** 3:4
**example** 24:8 25:17 26:8
**exhibit** 2:21 11:5,6,7,10,11 16:18,19
**experience** 20:14 25:11
**Expires** 28:22
**explain** 13:9 18:22 22:24
**explained** 22:23
**eyes** 19:1

---
**F**

**fair** 3:22
**family** 3:11
**far** 17:15 21:1 26:17
**FD** 8:18 15:19 20:1,15,17
**FD's** 21:20
**fear** 21:10,16
**feel** 19:12
**felt** 15:21 19:10 21:10
**female** 11:1
**field** 5:19,20 6:12,17,19
**financially** 28:16
**find** 11:17 12:1

**fire** 20:3
**firearms** 10:8
**FIRM** 2:4
**first** 5:7 8:11 10:23 12:20 15:3 16:1 19:24 25:21
**firsthand** 22:4
**FL** 1:21 2:6,12
**Florida** 1:2,24 28:4,20
**follows** 3:4
**followup** 12:3
**foregoing** 28:9
**foreign** 3:13
**forgot** 11:5
**form** 8:13 14:13 14:21 17:6 20:20 22:18 23:1,21 25:7 25:23 26:13
**forward** 11:20
**foundation** 8:14
**four** 4:23
**frequent** 8:6
**FTO** 5:22,23
**full** 3:24
**further** 28:12

---
**G**

**G** 2:9
**generally** 18:10
**gentleman** 8:10
**given** 22:3 28:11
**go** 17:17 24:17
**GOEPFERT** 1:12
**going** 11:20 23:23
**good** 3:7,8 24:20
**grabbed** 19:7
**graduate** 6:25
**GREGORY** 1:11

**GROUP** 1:19,25
**GUALTIERI**
  1:10
**guard** 6:14
**guess** 26:16,19
**GULF-TO-B...**
  1:20
**gurgling** 19:2

**H**

**H** 2:19
**half** 11:1
**HAMMOCK**
  1:22 28:7,19
**hands** 19:11
**happened** 4:2
  10:22
**happy** 3:18
**heading** 25:3
**hear** 3:12
**heard** 18:24
**help** 4:13 5:23
**history** 21:4,8
**homicides** 27:4
**honest** 13:22
  26:2
**Honestly** 13:2
**Honor** 6:13
**hostage** 5:17,18
  6:13
**hours** 4:11,12
**house** 8:19,20
  25:17,20,21,22
**hurt** 19:11
**husband** 18:20

**I**

**ideal** 10:17
**identification**
  2:21 11:12
  16:20
**illegal** 7:11
**include** 7:16
**independent**

9:23
**INDIVIDUAL**
  1:10,12
**information**
  16:9,23 17:4,5
  17:9,17 19:9
  22:3 23:8,17
  24:7 26:11
**infrequent** 7:19
**Inguna** 2:3 3:10
**injure** 19:13
**interested** 28:16
**interrupting**
  15:16
**introduced** 3:9
**investigation**
  11:18
**involved** 8:10
  9:4,5
**involvement**
  13:8,12 18:13
**involving** 8:11
  8:22 9:10
**irate** 8:19
**issue** 15:20
**issues** 7:14,15

**J**

**job** 4:6 5:9,15,25
  7:6,7,8
**Joseph** 4:1
**Julie** 1:6 18:19
  19:4,8,10,16
  21:3,7,9,11
  22:23 23:5,9
**justice** 7:3

**K**

**keep** 14:9,18
  25:12
**kept** 25:21 26:6
  26:10,11
**KIMBERLY**
  1:22 28:7,19

**kind** 4:13 26:16
**know** 3:14,18
  11:6 12:18,25
  13:2,5 17:14
  19:19 21:13
  24:6 25:5,17
  26:6,25
**knowledge**
  25:11

**L**

**lacks** 8:14
**Lamborghini**
  10:1,9 11:23
  13:11 14:2
  19:17 21:12,14
  22:16
**Lamborghini's**
  9:21 13:4
  16:16 18:6,8
**laptop** 18:1
  24:11,14 25:5
  26:9,20
**LARGE** 1:24
**LARGO** 2:12
**law** 2:4 15:22
  20:10 21:1
**leaves** 20:15
**left** 20:24
**let's** 24:3 25:19
**level** 19:25
**life** 11:16
**little** 18:7
**LLC** 2:4
**LOCATION**
  1:19
**long** 4:17 6:4
  16:12
**longer** 20:12
**look** 7:11 15:5
  16:15
**looking** 11:23
  23:22
**looks** 11:8

**lucid** 23:13
**lying** 19:1

**M**

**ma'am** 3:16,20
  4:16,19 5:6,10
  5:12,21 6:10
  6:12,16,20,22
  7:1,7,18,21,25
  8:5,8 9:7,12,15
  9:17,25 10:13
  10:18 11:4,15
  12:12,15 13:15
  14:1,7,10,16
  14:24 15:1,11
  16:7,11,14
  17:3 18:10,12
  20:5,7,9,14,19
  20:23 21:2,5
  21:25 22:12,21
  23:17 24:10,13
  24:15,19 25:10
**making** 7:13,13
  19:2,16
**male** 8:18
**mark** 11:9 16:17
**marked** 2:20
  11:12 16:20
**matter** 3:11
**mean** 6:18 26:25
**means** 17:4
**meant** 22:25
**medical** 7:17,20
  7:23 8:22 9:5
  9:10 15:14,20
  15:24 20:2
  21:1 22:6,7
**medically** 8:24
**memory** 14:12
  14:20 15:16
  23:23
**mentioned**
  22:13
**Michael** 1:16

3:2 4:1
**MIDDLE** 1:2
**military** 18:21
**minor** 19:8
**minutes** 3:9
**misstates** 8:14
**mistaken** 8:19
**misunderstood**
  26:11
**mold** 5:23
**moment** 20:10
  22:9
**months** 5:1,5
  11:21
**morning** 3:7,8
  3:12 10:4
  13:18 18:14,24

**N**

**N** 2:1,15
**name** 3:10,24
**nature** 16:9 25:2
**necessarily** 14:5
  14:10
**neck** 19:7,9
**need** 21:21 22:8
**needed** 8:18
**negotiation** 5:18
**negotiator** 5:17
  6:13
**new** 5:23 6:18
**Notary** 1:23
  28:20
**note** 8:17 23:19
**notes** 10:7 14:9
  14:18 23:8,18
  23:19,25
**number** 11:20
  13:12

**O**

**Object** 14:13,21
  17:6 20:20
  22:18 23:1

**Objection** 8:13
  23:21 25:7,23
  26:13
**observations**
  22:4
**obviously** 22:10
**occasion** 22:2
**occurrence** 8:3,7
**occurring** 7:12
**October** 1:17
  28:17
**office** 2:10 4:5
  4:22 5:5,8 6:1
  6:9 24:5 26:12
**officer** 5:19,20
  6:7,12,17 10:5
  10:9,19
**Okay** 3:24 4:17
  7:16 9:2,22
  10:11,21 11:3
  11:22 12:5
  13:13,20,24
  14:3 15:5,25
  17:13,23 18:4
  18:11,13,17
  19:15 20:3,16
  21:7 22:10,22
  24:11 25:4
  26:5,7,21 27:7
**Oldsmar** 4:9,10
  5:11,14 10:3
  15:19
**On-the-job** 6:19
**once** 9:8,16
  19:25 20:12,12
**open** 19:1
**opportunities**
  9:3
**opportunity**
  8:22 9:13
**options** 26:23
**order** 27:12
**ordered** 27:11
**original** 13:19

**origination**
  12:25

———— **P** ————
**P** 2:1,1
**p.m** 4:12
**page** 12:24
**paragraph** 21:6
  21:19 22:22
**Part** 5:17 7:7
**participate** 8:3
**particular** 4:8
  8:9 10:7
**parties** 28:13
**parties'** 28:14
**patients** 9:5,10
**patrol** 4:7,13,18
  5:9,15,18 6:7,7
  7:5,9,23
**PAUL** 2:9
**PCSO** 11:19
**PCSO1271** 24:1
**Pedestrians**
  24:25
**personal** 1:6
  20:13
**Petersburg** 2:6
  6:24
**physically** 25:4
  26:7
**Pinellas** 1:11,13
  2:10 4:5 24:5
  28:5
**place** 17:21
**placed** 19:11
**Plaintff** 2:3
**PLAINTIFF** 1:8
**Plaintiff's** 2:20
  11:11 16:19
**please** 3:14,18
  3:24 11:7
**plethora** 27:5
**point** 4:19 11:1
  15:19 18:2,25

  19:6,18,21,22
  22:7,11
**Police** 6:3
**policing** 7:13
**portion** 20:2
**possible** 23:20
  25:1,4,10 26:8
  26:21
**possibly** 15:24
  23:11
**post-traumatic**
  9:11 18:20
  23:10,12
**practice** 24:20
**preceding** 21:19
**preparation**
  9:19 12:11
**prepare** 13:5,7
  14:3,4 25:19
**prepared** 12:13
  12:17 14:11
  26:2
**presence** 18:6
  20:12
**present** 20:3,11
**pretty** 8:6
**primarily** 17:25
**primary** 5:10,15
  6:7 13:11,16
  13:23
**prior** 6:2 9:22
  15:1,22 16:3,4
  16:6 24:8,18
**proactively** 7:11
**problem** 3:13
**procedure** 10:14
  20:8
**proceedings**
  27:14
**produced** 11:18
  11:20
**provided** 19:10
  23:9
**PTSD-related**

  23:16
**public** 1:23 7:13
  28:20
**purposes** 10:6
  10:20

———— **Q** ————
**question** 3:15,17
  9:2,2 21:12
  24:3 25:15,16
**questions** 3:12
  27:9
**quote** 22:23 23:5
**quotes** 23:4

———— **R** ————
**R** 2:1
**radio** 17:21
**rapes** 27:4
**reaching** 19:5
**read** 9:20,20
  27:10,13
**reading** 9:22
**reason** 3:18
  25:18 26:4
**reasons** 9:3 10:9
  16:9
**recall** 5:1 15:25
  17:2 21:15
  22:14
**received** 16:23
  17:10 25:13
**recite** 27:2
**recollection** 9:23
**record** 3:25 8:14
  12:25 23:25
  25:20 26:1,2,3
  28:10
**recorded** 17:13
**records** 25:12
**recruits** 5:24
  6:18
**redness** 19:8
**refer** 18:15

**reference** 22:22
**referenced** 8:18
  23:19
**referring** 21:5
**reflect** 16:25
  18:5
**reflected** 20:16
**relative** 28:12
  28:14
**rely** 14:19
**remaining** 21:10
**remember** 8:17
  13:22 15:10,11
  15:12
**render** 15:22
**repaired** 14:18
**repeat** 3:19
  25:15
**rephrase** 3:15
  3:19
**report** 2:22,23
  9:20,21 11:14
  12:7,10 13:4,7
  13:11 14:4,11
  14:19,25 15:17
  15:18 16:12,16
  20:17 21:5
  22:15 23:24
  25:19 28:9
**REPORTER**
  1:22 28:1
**REPORTING**
  1:19,25
**reports** 9:22
  10:21
**represent** 3:10
  8:9
**REPRESENT...**
  1:6
**requested** 15:22
**residence** 10:8
  10:23 11:2
  16:13 17:1
  19:17 21:11

Michael Segura
October 3, 2019

22:14 24:17
25:13,14
**respond** 7:6,10
7:10,22 8:22
9:4,13 10:6
13:14 14:8
**responded** 8:11
10:2,10
**responders** 16:1
**response** 16:22
17:5,9
**review** 10:21
14:25 15:17
**reviewed** 9:18
12:8,10 15:4
**reviewing** 12:17
15:9,18
**ride** 4:14
**right** 25:5
**ROAD** 2:11
**role** 4:6 6:6 7:23
13:16
**roles** 6:11
**room** 18:25
**Rozelle** 2:9,17
8:13 11:7,8,16
11:19,24 12:3
14:13,21 17:6
20:20 22:18
23:1,21,25
25:7,23 26:13
27:10,13

**—— S ——**
**S** 2:1,19
**safe** 15:21,23
**safety** 10:5,9,20
**saw** 19:1
**saying** 3:14 12:2
26:17
**says** 12:20 16:23
19:1
**scene** 10:2 15:21
15:23 17:11

18:18 26:10
**scheduled** 26:5
**scratches** 19:8
**screaming** 18:24
19:5
**screen** 25:1
**second** 12:24
16:22 22:22
**secondary** 5:16
6:11
**see** 19:7 24:17
26:17,18,22
**Segura** 1:16 3:2
4:1
**Segura's** 11:24
**seizure** 8:10,12
8:21 9:1,5
23:20 24:2
**seizures** 8:23
**separate** 10:11
**September** 4:3,4
4:17 5:4 18:17
**service** 15:19
**sheriff** 1:11,13
4:7,14,18,21
5:9,16 6:2 7:5
7:9,24 25:12
**sheriff's** 2:10
4:5,22 5:5,8
6:1,9 24:5
26:11
**sheriffs** 5:24 8:1
**shift** 4:8,10,11
**shows** 12:18
26:20
**shut** 19:21
**sic** 23:14
**similar** 6:8
**sir** 3:7 11:14
12:7
**situation** 10:17
19:25 20:10
24:19
**six** 6:5 11:20

**smaller** 10:3
**sorry** 12:9 13:6
15:15
**sounds** 19:2
**south** 5:13
**speak** 6:19
19:24 20:13
**spent** 16:25
**Springs** 6:3
**St** 2:6 6:24
**staff** 22:6
**staging** 15:20
**stairs** 19:20
**standard** 20:8
**standing** 19:20
**staring** 24:25
**start** 4:20 9:4
19:23
**started** 4:24 5:2
19:2 28:4,20
**stated** 8:17 10:7
12:16 19:4,12
21:3,7
**states** 1:1 13:3
**stay** 20:14
**stayed** 20:6
22:17,21
**stenographer**
28:7
**stenographica...**
28:8
**stopped** 19:22
**stress** 9:11 18:21
23:10,12
**strike** 24:3
**study** 7:2
**subsequently**
19:22,23 20:24
23:9
**suffer** 23:10
**suffered** 18:20
**Summarize**
18:13

**summoned**
16:10
**supervisor**
12:22
**SUPERVISO...**
1:10
**supplement**
12:16 13:3,5
13:10,12 14:3
**sure** 11:24 14:17
20:14 25:16
26:2
**sworn** 3:3
**system** 26:6

**—— T ——**
**T** 2:19
**take** 7:23 13:16
16:15 25:2
**talk** 16:6 22:16
**talked** 16:1,3
**TAMPA** 1:3
**Tarpon** 6:3
**teach** 5:23
**team** 4:15 5:18
6:13
**tell** 7:14 10:22
12:16 16:1,12
22:15
**telling** 15:15
23:15
**terrible** 25:16
**testified** 3:4
**testimony** 28:11
**Thank** 27:9
**thing** 25:18
**things** 25:1 27:5
**thought** 23:16
**three** 5:5
**time** 1:18 5:11
5:18 7:4 8:11
10:4,20 11:11
14:19 15:4,21
16:19,23,23,24

16:24,25 17:11
17:12,13,23,25
18:2,4,4,9,9,21
19:12 20:6
27:14
**times** 17:2
**timestamps**
17:20,22 18:2
**timing** 18:7
**today** 15:7
**told** 23:13
**top** 12:20 19:20
**totality** 22:2
24:24
**traffic** 7:10
24:25
**trained** 8:25
24:16,20
**training** 5:19,20
6:12,17,18,19
**transcript** 28:10
**treat** 15:23
**treating** 20:4
**true** 28:10
**try** 3:15 10:20
**trying** 6:16
19:11,12
**two** 10:5 13:13
13:24 15:3
**type** 12:13 15:20
23:12 26:24

**—— U ——**
**ULMERTON**
2:11
**ultimately** 5:14
**understand** 3:17
4:13
**understanding**
3:14 23:6
26:12
**understood** 3:22
**UNITED** 1:1
**unquote** 22:23

unusual 7:19 8:2
upstairs 22:14
  22:16
urinated 19:3
usually 13:13
  14:4

**V**

V 1:6
VARSLAVA...
  2:3
vehicle 24:14
  25:6
vehicles 10:11
versus 13:16
vicinity 18:11
violence 21:4,8
visit 25:21
VS 1:9

**W**

wait 10:15
walk 10:15,22
way 17:22,24
  22:6
we'll 10:18 12:3
we've 24:20
weapons 8:20
  25:1
week 25:19
weekend 15:8
weeks 15:3
went 18:22,25
  19:2,17 20:1
  22:16,16
witness 28:11
work 5:25
worked 6:2
working 4:20
  7:5 10:5
wouldn't 8:25
  24:23
wrap 27:10
write 21:3

written 21:9,20

**X**

X 2:15,19

**Y**

year 5:5
years 4:23 6:5
yelling 19:21
yesterday 15:5

**Z**

**0**

**1**

10:30 1:18 27:15
10750 2:11
11 2:22
12-26-2021
  28:22
1272 24:1
155298 28:21
16 2:23

**2**

2015 4:24,25 5:1
  5:3,8
2016 4:3,4,17
  5:4 6:9 7:4
  18:17
2019 1:17 28:17
203 2:5
26th 28:17

**3**

3 2:16
3000 1:20
33701 2:6
33759 1:21
33778 2:12
35 2:22 11:8,10
  11:11
36 2:23 16:19
3RD 1:17

**4**

449 2:5

**5**

500 1:20

**6**

**7**

7:00 4:12,12
7th 18:17

**8**

8:18-CV-2116...
  1:4

**9**

9:30 1:18
911 7:6,10,16
985 11:20,22