UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Julie V. DeGraw,
     Plaintiff,

vs.                               Case No.: 8:18-cv-02116-T36-SPF

Bob Gualtieri, et al.,
     Defendants.
_____/

**DEPUTY GREGORY GOEPFERT'S
MOTION FOR SUMMARY JUDGMENT**

Donald DeGraw was in a small, cluttered, dimly-lit bedroom full of guns, screaming and yelling and advancing on Deputy Goepfert with raised, balled fists, when Deputy Goepfert, retreating, tasered him.  Dkt. 96 ¶¶ 29, 33-38 & 73.  DeGraw died later that day.  Id. ¶ 101.  The plaintiff claims that Deputy Goepfert's use of the taser was unconstitutional.  Dkt. 48, at 3 (Count I).  Deputy Goepfert seeks summary judgment under Fed. R. Civ. P. 56(a) based on his contemporaneously filed statement of undisputed material facts.  Dkt. 96.  As grounds for and in support of this motion, Deputy Goepfert states as follows:

**MEMORANDUM OF LAW**

**I.      PROCEDURAL BACKGROUND**

The only claim against Deputy Goepfert in the second amended complaint, the operative pleading in this case, is that his use of the taser on DeGraw constituted excessive force in violation of the Fourth Amendment, made actionable under 42

U.S.C. § 1983.  Doc. 48, at 3.  The plaintiff also asserts individual and municipal constitutional liability claims against Pinellas County Sheriff Bob Gualtieri and a state-law, vicarious liability wrongful death claim against the Sheriff that sounds in negligence.  Dkt. 48, at 11 (Count II "Individual and Supervisory Excessive Force Claim") & 14 (Count III, "State Law Wrongful Death Claim").  The Sheriff has separately moved for summary judgment.  Dkt. 99.

The plaintiff does not challenge the constitutionality or propriety of DeGraw's seizure; there is no Fourth Amendment claim based on false arrest.  Put another way, the plaintiff does not dispute that Deputy Goepfert had a right to seize DeGraw.  Rather, she claims that the amount of force Deputy Goepfert used to seize DeGraw was unconstitutional.  The only use of force in issue is the taser.

Discovery is complete.  There are no other pending motions.  The case is set for the November 2020 Trial Term.  Dkt. 83, at 2 ¶ 6.

As explained below, Deputy Goepfert's use of force was constitutional — it was reasonable under the totality of these perilous circumstances — and it did not violate clearly established law.  The Court should grant him summary judgment.

## II.   STANDARDS OF REVIEW

### A.   THE SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper when the record evidence discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In

determining whether there exist any material factual issues to be tried, the trial judge views the facts, including reasonable inferences drawn from those facts, in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," id. at 250, and "mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment," Hutchinson v. City of St. Petersburg, No. 8:05-cv-833-T-30TGW, 2006 WL 2789010, at *3 (M.D. Fla. Sept. 26, 2006), citing Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

### B.   QUALIFIED IMMUNITY

A government official who acts within his or her discretionary authority is immune from suit unless the official's conduct "violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotations omitted), cert dismissed, Timoney v. Keating, 131 S. Ct. 501 (2010).  Here, Deputy Goepfert acted within his discretionary authority.  Dkt. 48, at 3 ¶¶ 10-11, 13.  See Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (addressing this

3

antecedent question for qualified immunity).  Therefore, to strip Deputy Goepfert of

qualified immunity, the plaintiff must satisfy the Supreme Court's two-part test:

(1) "whether [the] plaintiff's allegations, if true, establish a constitutional violation,"

Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201

(2001)), and (2) whether the constitutional violation was clearly established, Saucier,

533 U.S. at 201.  Unless the plaintiff can demonstrate both of these things — a

constitutional violation and that the law at the time of the act complained of clearly

established the unconstitutionality of that conduct — then the court is "required to

grant qualified immunity" to Deputy Goepfert.  Singletary v. Vargas, 804 F.3d 1174,

1180 (11th Cir. 2015) (reversing denial of qualified immunity).

## III.  DEPUTY GOEPFERT'S USE OF FORCE WAS REASONABLE UNDER THE TOTALITY OF THE CIRCUMSTANCES AND DID NOT VIOLATE THE FOURTH AMENDMENT

First, the plaintiff does not challenge the constitutionality of Deputy

Goepfert's entry into the DeGraw residence or DeGraw's bedroom.  See Dkt. 48,

at 9 ¶¶ 40-41 (stating a claim for relief based only on excessive force).  This is with

good reason.  The Supreme Court has unanimously held that "law enforcement

officers may enter a home without a warrant to render emergency assistance to an

injured occupant or to protect an occupant from imminent injury."  Brigham City v.

Stuart, 547 U.S. 398, 403 (2006).  See City & County of San Francisco v. Sheehan,

575 U.S. 600, 135 S. Ct. 1765, 1774-75, (2015) (same); Michigan v. Fisher, 558 U.S.

45, 47 (per curiam) (same).  See also United Sates v. Holloway, 290 F.3d 1331, 1335

4

(11th Cir. 2002) ("The most urgent emergency situation excusing police compliance with the warrant requirement is, of course, the need to protect or preserve life.").

Deputy Goepfert entered the DeGraw residence in response to a 911 call and at the plaintiff's invitation to help get her husband treated by paramedics who were on-scene but refused to go inside because of the danger: DeGraw, screaming and incoherent, was in a room full of guns and the plaintiff feared he was "ready to attack" her. Dkt. 96 ¶¶ 2, 6-8 & 23. The constitutionality of Deputy Goepfert's entry and his attempt to bring DeGraw safely outside the bedroom to the care of emergently summoned paramedics is beyond question.

Rather, the gravamen of the plaintiff's claim is that Deputy Goepfert used excessive force on DeGraw. Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment's reasonableness standard:

> Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Graham v. Connor, 490 U.S. 386, 388 (1989). As the Eleventh Circuit explained in Lee v. Ferraro, "the force used by a police . . . must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." 284 F.3d at 1198. Courts measure the

reasonableness of that force from the perspective of a reasonable officer on the scene

with the attendant facts and circumstances.  Saucier, 533 U.S. at 204-05; Graham,

490 U.S. at 396.  "The calculus of reasonableness must embody allowance for the

fact that police officers are often forced to make split-second judgments . . . in

circumstances that are tense, uncertain, and rapidly evolving . . . about the amount of

force that is necessary in a particular situation."  Graham, 490 U.S. at 396-97.  As

the Eleventh Circuit has held:

> In making the excessive force inquiry, we are not to view
> the matter as judges from the comfort and safety of our
> chambers, fearful of nothing more threatening than the
> occasional paper cut as we read a cold record accounting
> of what turned out to be the facts.  We must see the
> situation through the eyes of the officer on the scene who
> is hampered by incomplete information and forced to
> make a split-second decision between action and inaction
> in circumstances where inaction could prove fatal.

Crosby v. Monroe County, 394 F.3d 1328, 1333-34 (11th Cir. 2004).

This case presents the kind of "tense, uncertain, and rapidly evolving"

circumstances where a law enforcement officer was "forced to make a split-second

decision between action and inaction" envisioned by the Supreme Court and the

Eleventh Circuit.  The scene that Deputy Goepfert was summoned to was one where

the plaintiff, who was a nurse, was frightened enough by her husband's conduct that

she had called 911 and refused to go upstairs to check on him.  Dkt. 96 ¶ 7.  When

Deputy Goepfert and Deputy Martinez arrived, the plaintiff informed them that

there were guns "throughout" the room and that DeGraw slept with a gun under his

pillow.  Id. ¶ 12.  Deputy Goepfert corroborated this when he saw gun cases in the small, cluttered room and a knife on the floor.  Id. ¶ 18.  He also saw DeGraw with blood in his mouth, yelling and incoherent.  Id. ¶¶ 17, 23.  Deputy Goepfert tried to engage DeGraw in conversation and call him out of the room, efforts that lasted several minutes.  Id. ¶¶ 19-22, 40.  It was only when DeGraw came toward Deputy Goepfert, screaming and yelling, with his fists balled and raised that Deputy Goepfert used the taser, and he only used the taser after he repeatedly implored DeGraw to stop and not come closer and only after he retreated.  Id. ¶¶ 29, 33-38 & 73.  And while the taser was used on five occasions, Deputy Goepfert cut four of the activations short, minimizing the force he used, and he only reapplied the taser when DeGraw continued to try to stand up in resistance to commands to stay on the ground.  Id. ¶¶ 42, 44-65.  Although DeGraw continued to struggle and resist after the taser was stopped for the last time (including grabbing one of the deputies) and it took three deputies to secure DeGraw in handcuffs, no additional force was used on DeGraw.  Id. ¶ 73, 79-86.  He was not tasered again nor was he hit, kicked, punched or subjected to any other force.[1]

---

[1] The plaintiff claims that Deputy Goepfert placed DeGraw in handcuffs "while applying weight to his body . . . ."  Dkt. 48, at 9 ¶ 40.  No facts support this averment.  The undisputed material facts are that Deputy Goepfert was trying to restrain DeGraw's feet, which DeGraw was kicking and thrashing, while others handcuffed him.  Dkt. 96 ¶ 81.  It is also undisputed that no one put any weight on DeGraw.  Id. ¶ 103.

The Eleventh Circuit has consistently held that behavior such as DeGraw's —

"noncompliance or continued physical resistance" — entitles deputies to use less-

lethal force[2] such as a taser, <u>Barfield v. Rambosk</u>, 641 F. App'x 845, 848 (11th Cir.

2015) (per curiam), even when the suspect is unarmed, <u>Smith v. LePage</u>, 834 F.3d

1285, 1295 (11th Cir. 2016).  In fact, "'where a suspect appears hostile, belligerent,

and uncooperative, use of a taser might be preferable to a physical struggle causing

serious harm to the suspect or the officer.'"  <u>LePage</u>, 834 F.3d at 1294 (citations

omitted); see also <u>Zivojinovich v. Barner</u>, 525 F.3d 1059, 1073 (11th Cir. 2008) (per

curiam) (finding that officers reasonably tased a handcuffed detainee who violently

---

[2] The plaintiff claims that Deputy Goepfert used deadly force by tasering DeGraw.  Dkt. 48, at ¶ 40 ("The force applied by Deputy Goepfert in applying prolonged electric shocks to Mr. DeGraw to the bare chest in a manner that constituted lethal force . . . .").  There is no authority for the proposition that a taser is deadly force.  Nor is there any authority for the proposition that because the force used actually resulted in death (which Deputy Goepfert disputes, but which is immaterial to the constitutionality of his use of force or his entitlement to qualified immunity) means that deadly force was used.  Indeed, the United States Supreme Court, the Eleventh Circuit, and this Court consistently refer to a taser as a "nonlethal," "less lethal," or "non-deadly" weapon.  <u>Kisela v. Hughes</u>, 138 S. Ct. 1148, 1157 (2018) (Sotomayor, J., dissenting) (recognizing taser as "less intrusive means before deploying deadly force"); <u>Caetano v. Massachusetts</u>, 136 S. Ct. 1027, 1032 (2016) (Alito, J., concurring) (describing taser as "nonlethal" and designed to "incapacitate a target without permanent injury or known side effects" (internal quotation omitted)); <u>Lenning v. Brantley County</u>, 579 F. App'x 727, 732 (11th Cir. 2014) (per curiam) (distinguishing taser from deadly force); <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1276 n.2 (11th Cir. 2011) ("A 'taser' is a non-deadly weapon commonly carried by law enforcement."); <u>Taser Int'l v. Phazzer Elecs.</u>, No: 6:16-cv-366, 2017 WL 3584906, at *6 (M.D. Fla. July 21, 2017) (describing taser as a "non-lethal weapon[]"); <u>Schutt v. Lewis</u>, No. 6:12-cv-1697, 2014 WL 3908187, at *1 (M.D. Fla. Aug. 11, 2014) (referring to the taser "and other less lethal weapons"); <u>Claridy v. City of Lake City</u>, No: 3:13-cv-558, 2014 WL 11430860, at *14 & n. 19 (M.D. Fla. Nov. 18, 2014) (noting that a taser is a "non-deadly weapon").

resisted arrest and continued to struggle); Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (affirming constitutionality of use of taser on an unarmed and non-violent arrestee who failed to follow reasonable instructions).

Indeed, the Eleventh Circuit has found the use of a taser to be constitutional in circumstances far less exigent and dangerous than here, where Deputy Goepfert was confronted with a noncompliant, unsecured subject who was reported to be armed. For example, in Draper, officers stopped the plaintiff's truck for a minor traffic violation. 369 F.3d at 1272. The plaintiff was belligerent with the officers, denied that he had done anything wrong, and ignored requests for documentation. Id. at 1272-73. After the plaintiff ignored the officers' fifth request for documentation, one of the officers tasered him. Id. at 1273. In holding that the use of force in Draper was reasonable under the circumstances and therefore constitutional, the Eleventh Circuit noted the Supreme Court's pronouncement in Graham that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Id. (quoting Graham, 490 U.S. at 396-97). Because he was faced with far more tense and uncertain circumstances than those the officer in Draper confronted, Deputy Goepfert did not violate the Constitution by using his taser on DeGraw.

In Buckley v. Haddock, the plaintiff was arrested and placed in handcuffs for refusing to sign a speeding ticket. 292 F. App'x 791, 792-93 (11th Cir. 2008). Sitting

on the ground, the plaintiff expressed to the officer he would be better off dead and refused to stand up to get into the cruiser.  Id.  Even in the absence of the threat of weapons and active flight, the plaintiff in Buckley was contacted by the taser at least eight times.  Id.  Again, the Eleventh Circuit held that this use of force was within the range of reasonable conduct under the Fourth Amendment and that the officer was entitled to qualified immunity.  Id. at 794.  The Eleventh Circuit has repeatedly upheld the constitutionality of greater uses of force involving tasers in less dangerous environments and under less exigent circumstances than those Deputy Goepfert confronted.  See, e.g., Moore v. Gwinnett County, 805 F. App'x 802, 809 (11th Cir. 2020) (per curiam); Alday v. Groover, 601 F. App'x 775, 777-78 (11th Cir. 2015) (per curiam); Bussey-Morice v. Gomez, 587 F. App'x 621, 630-31 (11th Cir. 2014); Anthony v. Coffee County, 579 F. App'x 760, 766 (11th Cir. 2014); Hoyt v. Cooks, 672 F.3d 972, 979-80 (11th Cir. 2012); Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306 (11th Cir. 2009); Zivojinovich, 525 F.3d at 1073.

DeGraw was not restrained in handcuffs, unlike the plaintiff in Buckley.  DeGraw was in a room known to be full of guns where there was a knife on the floor, unlike the plaintiffs in every case upholding the constitutionality of the use of a taser.  In none of these cases, too, was the responding officer told to expect that a gun was hidden under a pillow, with the incoherent, screaming, and ultimately belligerent person who hid the gun just a few feet away.  And unlike the plaintiffs in these other cases, DeGraw was in a small, cluttered, dimly-lit bedroom, a location

that Deputy Goepfert was totally unfamiliar with and, in contrast, a location that DeGraw would reasonably be expected to be intimately familiar with.  <u>Moore</u>, 805 F. App'x at 809 (noting significance of the "disparity of familiarity" with location where use of force took place).  Simply put, every Eleventh Circuit case holding the use of a taser to be constitutional involved far less dire and dangerous conduct and circumstances than Deputy Goepfert faced.

Similarly, these Eleventh Circuit cases — and the circumstances that Deputy Goepfert confronted — are distinct from cases where law enforcement officers applied force to completely passive or compliant people in obvious violation of the Fourth Amendment.  See e.g., <u>Glasscox v. City of Argo</u>, 903 F.3d 1207, 1214 (11th Cir. 2018); <u>Scott v. Battle</u>, 688 F. App'x 674, 679 (11th Cir. 2017) (per curiam); <u>Saunders v. Duke</u>, 766 F.3d 1262, 1267 (11th Cir. 2014); <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1197-99 (11th Cir. 2002); <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 927-28 (11th Cir. 2000); <u>Smith v. Mattox</u>, 127 F.3d 1416, 1419-20 (11th Cir. 1997) (per curiam).  In these cases, *no* force was constitutionally appropriate because the law enforcement officers were dealing with unambiguously unresisting, completely compliant, unarmed people.  See also, e.g., <u>Piazza v. Jefferson County</u>, 923 F.3d 947, 956 (11th Cir. 2019) (holding that using a taser on an "already-tased, incapacitated, incontinent, and unresisting detainee" constituted excessive force); <u>Wate v. Kubler</u>, 839 F.3d 1012, 1021 (11th Cir. 2016) (tasering handcuffed, unmoving person held unconstitutional); <u>Powell v. Haddock</u>, 366 F. App'x 29, 31

(11th Cir. 2010) (per curiam) (tasering unresisting person who had raised her hands violated clearly established law).

A panoply of Eleventh Circuit cases supports the constitutionality of the tempered use of a taser on an unrestrained, noncompliant subject who was yelling, screaming, incoherent, and advancing on the deputy with his fists balled and raised in a room with weapons in plain view and a gun in easy reach.  Draper, Buckley, and their progeny support the constitutionality of Deputy Goepfert using a taser under those circumstances.  Those cases also support the constitutionality of Deputy Goepfert's limited, judicious use of the taser for a total of 12 seconds spread over a minute and a half when DeGraw failed to obey commands to stay down and continued to try to stand up while awaiting the arrival of another back-up deputy to enable them to safely secure DeGraw in handcuffs.  Because Deputy Goepfert's use of the taser did not violate the Constitution, he should be granted qualified immunity and the Court should enter summary judgment.

## IV.   DEPUTY GOEPFERT'S USE OF FORCE DID NOT VIOLATE CLEARLY ESTABLISHED LAW

### A.   Nothing in the Precedental Courts in September 2016 Clearly Established That Deputy Goepfert's Actions Were Unconstitutional

As noted above, the plaintiff must also show that Deputy DeGraw violated a clearly established constitutional right.  It is the plaintiff's burden to show that Deputy Goepfert violated clearly established law.  Jordan v. Doe, 38 F.3d 1559, 1565

(11th Cir. 1994).  The plaintiff "must point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida" to show that the constitutional violation was clearly established at the time of the events in question. Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).

For a right to be clearly established, pre-existing law at the time of the alleged acts must have provided fair warning to Deputy Goepfert that his actions were unconstitutional.  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  The "relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Bashir v. Rockdale County, 445 F.3d 1323, 1330 (11th Cir. 2006) (citation omitted).  The law that the official allegedly violated "must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law."  Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc), *abrogated on other grounds by* Hope, 536 U.S. 730 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  An officer is entitled to qualified immunity if "officers of reasonable competence could disagree on th[e] issue . . . ."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  The unlawfulness of the conduct in question must be "apparent."  Bashir, 445 F.3d at 1330-31.

The test of whether a right is "clearly established" does not apply at a high level of generality.  Instead, to deny qualified immunity, "the right the official is

alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." Anderson, 483 U.S. at 640.  "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel . . . the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*"  Lassiter, 28 F.3d at 1150. "[A]n officer is entitled to qualified immunity from an excessive force claim 'unless application of the [excessive force] standard would inevitably lead every reasonable [official] in [the officer's] position to conclude the force was unlawful." Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (per curiam) (quoting Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993)).  To show that the constitutional violation was clearly established, the plaintiff must demonstrate (1) "that a materially similar case has already been decided, giving notice to the police;" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." Mercado, 407 F.3d at 1159 (citations omitted).

Here, there is no clearly established law in the precedental courts that demonstrates that every like-situated, reasonable officer would have known that using a taser to try to restrain a noncompliant, resisting, unrestrained subject who was reported to be armed was illegal.  Instead, as noted above, controlling case law in the Eleventh Circuit demonstrates precisely the opposite.

In fact, the year before the use of force in issue here, the Eleventh Circuit reaffirmed Draper, holding that "use of a taser to effectuate an arrest did not constitute excessive force when the suspect repeatedly refused to comply with the officer's verbal commands." Barfield v. Rambosk, 641 F. App'x 845, 848 (11th Cir. 2015) (per curiam). See Armstrong v. Village of Pinehurst, 810 F.3d 892, 906-09 (4th Cir.), cert. denied, 137 S. Ct. 61 (2016) (citing Draper, noting lack of uniformity among circuits, and holding that it was not clearly established that taser use on nonviolent, resisting person violated Fourth Amendment); see also Floyd v. Corder, 426 F. App'x 790, 791 (11th Cir. 2011) (per curiam) ("[T]he existing law at the time of the incident did not put Deputy Sheriff Corder on notice that deploying his taser three times to subdue a noncompliant suspect where the underlying crime was minor and where no violence had occurred violated Floyd's constitutional rights."). Because no controlling case "truly compels" the conclusion that Deputy Goepfert violated clearly established constitutional rights, he is entitled to qualified immunity.

Absent fact-specific case law, the plaintiff must show that a "preexisting general constitutional rule applies 'with obvious clarity to the specific conduct in question,' and it must have been 'obvious' to a reasonable police officer that the pertinent conduct given the circumstances must have been unconstitutional at the time." Vinyard v. Wilson, 311 F.3d 1340, 1352 (11th Cir. 2002) (quoting Hope, 536 U.S. at 741). "[T]he 'obvious clarity' standard is often difficult to meet . . . ." Id. at 1355. It is only on "rare occasion" that the Eleventh Circuit has "concluded that

general Fourth Amendment principles make the constitutional violation obvious."
Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1307 (11th Cir. 2006).

This case is not within "the slender category of cases in which the
unlawfulness of the conduct is readily apparent even without clarifying caselaw."
Smith v. Mattox, 127 F.3d 1416, 1420 (11th Cir. 1997) (per curiam).  There was
nothing "obvious" about the unique, chaotic, ambiguous, and dangerous situation
Deputy Goepfert confronted.  In Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009), for
example, the Eleventh Circuit dealt with an officer who, without warning, tasered a
compliant individual eight times who had flagged the officer down seeking help and
who was not physically or verbally threatening in any way.  Id. at 902-03.  Unlike
DeGraw, whose resistant conduct was unbroken, who reportedly had a hidden gun
in the room, who was in a small, cluttered room with weapons in plain view, and
who advanced toward Deputy Goepfert screaming and balled raised fists despite
being ordered repeatedly to stop, the plaintiff in Oliver "never acted in a threatening
or belligerent manner toward the officers, nor did he even curse at them."  Id. at 902.

Of course, it is "obvious" that the conduct in Oliver is unlawful and no prior
decision is needed to put law enforcement officers on notice of such
unconstitutionality, just as no prior case was necessary to inform officers that they
cannot handcuff someone to a hitching post for seven hours in the hot sun, Hope,
536 U.S. at 734-35, sic a 94-pound German Shepherd on a prostrate, nonthreatening
man who stole $20 in convenience store snacks, Priester, 208 F.3d at 923, 927, or

slam a compliant, handcuffed woman's head on her car trunk for honking her horn in rush-hour traffic, Lee, 284 F.3d at 1199.  Indeed, the obvious clarity doctrine cases are all cases in which *no force* was reasonable.  See, e.g., Glasscox v. City of Argo, 903 F.3d 1207, 1214-15 (11th Cir. 2018) (unresisting plaintiff repeatedly expressed intent to comply with request to get out of his vehicle and was only thwarted from doing so by the officer's repeated tasings); Reese v. Herbert, 527 F.3d 1253, 1258-59, 1273 (11th Cir. 2008) (bystander thrown against wall, choked, hit, and tossed to the ground where he was then kicked and pepper sprayed); Hadley v. Gutierrez, 526 F.3d 1324, 1327 (11th Cir. 2008) (plaintiff immediately complied and was handcuffed when officers, escorting him to police car without any resistance, began punching him in the face and stomach, to the point of unconsciousness); Vinyard, 311 F.3d at 1348-49 (plaintiff in custody, "handcuffed, secured in the back of a patrol car," and separated from officer by a partition nevertheless beaten and pepper sprayed); Lee, 284 F.3d at 1199; Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000) (officer slammed handcuffed, unambiguously unresisting arrestee's head on pavement repeatedly until he was unconscious); Priester, 208 F.3d at 923, 927; Smith, 127 F.3d at 1418 (plaintiff "docilely submitted to arrest" and got on ground when ordered to do so, then officer broke his arm in multiple places).

What the obvious clarity doctrine cases have in common, and what the situation Deputy Goepfert confronted wholly lacked, was unambiguous surrender and compliance by a person who, nevertheless, was then subjected to the use of force

17

in question.  Here, DeGraw's resistance had not unambiguously abated — he continued to struggle even after the taser deployment and it took three deputies to handcuff him — to the extent where *every* reasonable law enforcement officer would have recognized that DeGraw had ceased his struggle, no longer presented a danger to the officers, and would not present a danger to medical personnel who were there to treat him.  Rather than being an "obvious" or "easy" case, United States v. Lanier, 520 U.S. 259, 271 (1997), the situation Deputy Goepfert confronted inhabited the "hazy border between excessive and acceptable force," Saucier v. Katz, 533 U.S. 194, 201 (2001), where qualified immunity protects officers from the hindsight substitution of judicial decisionmaking for law enforcement expertise.

Qualified immunity gives deference to law enforcement officers' judgment in difficult scenarios like this one because of the inability of courts to recommend an alternative course of action for police officers.  The Supreme Court held that judges should reject the invitation to pick among tactical alternatives in determining the reasonableness of a use of force.  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (rejecting suggestion that officer should have waited to see if tire-deflation device worked before shooting at engine block of fleeing vehicle).  Put another way, a § 1983 plaintiff cannot "establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided."  City & County of San Francisco v. Sheehan, 575 U.S. 600, 135 S. Ct. 1765, 1777 (2015). It is because of this lack of judicial expertise in matters of law enforcement tactics

and decisionmaking that it must be "beyond debate" that an officer acted

unreasonably in the circumstances before a court can deprive him of qualified

immunity.  <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011).

Underlying the premise of the obvious clarity doctrine is that courts know, and

law enforcement officers should know, because *everyone* knows, that police officers

cannot use force on unambiguously compliant people who pose no objectively

reasonable threat to the public or officers.  The expertise that judges lack to pick

among tactical alternatives in cases that lie on the "hazy border between excessive

and acceptable force" is unnecessary to decide the easy — or "obvious" — cases.

<u>Saucier</u>, 533 U.S. at 201.  This is not such a case.  There was nothing "easy" about

the circumstances that Deputy Goepfert confronted, and it cannot be said that

existing precedent placed the conclusion that Deputy Goepfert "acted unreasonably

in these circumstances beyond debate."  <u>Mullenix</u>, 136 S. Ct. at 309 (quotation

omitted).  Because "[q]ualified immunity gives government officials breathing room

to make reasonable but mistaken judgments about open legal questions," this Court

should find that Deputy Goepfert is entitled to its protection.  <u>Lane v. Franks</u>, 134 S.

Ct. 2369, 2381 (2014) (quotation omitted).

### B.    The Plaintiff's Invocation of Extra-Judicial Sources Cannot Strip Deputy Goepfert of Qualified Immunity

The Second Amended Complaint is replete with references to various sources

that, the plaintiff contends, demonstrate the unconstitutionality of Deputy Goepfert's

use of a taser on DeGraw.  None of these materials or sources can serve as the foundation for a Fourth Amendment claim; none of them are relevant to the constitutional of qualified immunity analyses used to measure the reasonableness of Deputy Goepfert's conduct or whether that conduct violated clearly established law. See, e.g., Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (holding that plaintiff "must point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida" to show a constitutional violation was clearly established).

First, the plaintiff's reliance on Fla. Stat. § 943.1717 is misplaced.  Dkt. 48, at 9 ¶ 39.  Indeed, this Court has expressly rejected the proposition that that statute is relevant to a constitutional use of force case.  Webster v. Fredricksen, Case No. 8:18-cv-02790, 2019 WL 1765069, at *2 (M.D. Fla. Apr. 22, 2019) (Jung, J.).  "Instead," the Court found, "to determine whether use of force comports with the Fourth Amendment, the question is still whether the officers' conduct was objectively reasonable."  Id. (citations omitted).

The same is true for "Florida criminal justice standards for use of dart firing stun guns," Dkt. 48, at 9 ¶ 38, "manufacturer's bulletins," id., and manufacturer's recommendations, id. at 8 ¶ 37.  It is unclear what the former is, although it has even less heft than a state statute and, therefore, can fare no better as a wellspring of constitutional interpretation.  The latter two items are product literature produced by a private, profitmaking business.  This is not a product liability lawsuit, and Axon

20

Enterprise, Inc. — the company that manufactured the Taser X26P conducted energy weapon used by Deputy Goepfert — does not make or interpret the law.  No precedental court has ever found or held that Axon's product literature, whether "bulletins," "warnings," or other documentation, bears in any way on the constitutional liability of a law enforcement officer.

Finally, the opinions of the plaintiff's use of force experts are similarly irrelevant to the reasonableness of Deputy Goepfert's use of force under the totality of the circumstances or whether his use of force violated clearly established law.  The gist of their testimony was that Deputy Goepfert was employed at an agency with good policies and he received good training but that he did not follow those policies or training in how he dealt with DeGraw.  Dkt. 98 ¶¶ 20, 45.  The Supreme Court has held that such evidence is irrelevant to constitutional liability or qualified immunity.  Sheehan, 135 S. Ct. at 1777; see also Saucier v. Katz, 533 U.S. 194, 216, n. 6 (2001) (Ginsburg, J., concurring in judgment) ("In close cases, a jury does not automatically get to second-guess these life and death decisions, even though a plaintiff has an expert and a plausible claim that the situation could better have been handled differently.'") (quotation omitted).  Summary judgment is warranted.

## V.    **CONCLUSION**

For the foregoing reasons, Deputy Goepfert respectfully requests that this Court grant him summary judgment and such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Paul G. Rozelle
Paul G. Rozelle
Senior Associate Counsel
FBN: 75948
10750 Ulmerton Road
Largo, FL   33778
Telephone:  (727) 582-6274
Facsimile:   (727) 582-6459
*prozelle@pcsonet.com*
*amarcott1@pcsonet.com*
Attorney for Deputy Goepfert

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 10, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Paul G. Rozelle

22